**Alvin DURRETT, Plaintiff-Appellee,**

v.

**JENKINS BRICKYARD, INC.,
Defendant-Appellant.**

No. 81–7018.

United States Court of Appeals,
Eleventh Circuit.

June 14, 1982.

Samuel D. Hewlett, III, Atlanta, Ga., for defendant-appellant.

David S. Beale, Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and TJOFLAT and VANCE, Circuit Judges.

TJOFLAT, Circuit Judge:

Jenkins Brickyard, Inc., the defendant below, appeals the district court's denial of an assessment of attorney's fees against Alvin Durrett, the plaintiff below, and against

Durrett's counsel, David S. Beale. The district court erred by declining to assess fees against Durrett, and by testing Beale's liability for fees by the wrong legal standard. We therefore remand the case for a determination of an appropriate assessment against Durrett, and for a hearing on Beale's liability for attorney's fees.

## I.

On December 4, 1979, Alvin Durrett filed a complaint in the district court alleging that Jenkins Brickyard, Inc. (Jenkins Brick) had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1976), by discharging him because of his race; that he had filed a discrimination charge against Jenkins Brick with the Equal Employment Opportunity Commission (EEOC); that Jenkins Brick was notified of the charge; and that the EEOC had issued a right-to-sue letter to Durrett.[1] David S. Beale, whom the court had appointed to represent Durrett upon Durrett's application to proceed *in forma pauperis*, signed the complaint as the plaintiff's attorney.

On December 19, 1979, Jenkins Brick's attorney, Hewlett, telephoned Beale to inform him that Durrett had sued the wrong party. Hewlett told Beale that he had discussed the case with the management of Jenkins Brick, with the Atlanta office of the EEOC, and with counsel for Pullman Swindell, a company completely unrelated to Jenkins Brick which engaged in the construction of brick kilns. These sources disclosed that Jenkins Brick had never employed Durrett and that Durrett had never filed a discrimination charge against Jenkins Brick. Rather, Durrett had worked for Pullman Swindell, which had constructed a kiln at Jenkins Brick's Atlanta facility. It was against Pullman Swindell, Hewlett told Beale, that Durrett had filed a discrimination charge with the EEOC.

Beale's and Hewlett's accounts of the ensuing course of their conversations differ.[2] According to Beale, he replied that he had no way to know whether Hewlett's representations were true, but that if they were, action would need to be taken. Beale maintains that he stated that he could ascertain the truth only through discovery, and asked whether Hewlett would provide informal discovery of pertinent information. When Hewlett replied that he would not, Beale indicated that he would pursue formal discovery.

Beale maintains further that in a second telephone conversation, on December 21, 1979, he told Hewlett that his own investigation indicated that amendment of the complaint to substitute Pullman Swindell as the party defendant might be proper, but that he would have to pursue discovery in order to be certain. Hewlett suggested that Beale dismiss the suit, and Beale replied that a dismissal without further discovery would not be in Durrett's interests. Hewlett again refused to provide informal discovery.

According to Hewlett, Beale's response to his advice that Durrett had sued the wrong party was that if Hewlett's representations were true, and he had no reason to doubt them, then indeed Jenkins Brick was the wrong defendant, and that he would take appropriate action. In the December 21 conversation, Hewlett maintains, Beale stated that he was going to amend the complaint the next week to substitute Pullman Swindell for Jenkins Brick. Hewlett replied that such an amendment might pose procedural problems, and recommended that Beale instead voluntarily dismiss the suit. He told Beale that if Jenkins Brick was forced to file an answer, it would seek attorney's fees for bad faith litigation. Beale replied that he could not dismiss the suit, because the time for filing a complaint against Pullman Swindell after the right-to-sue letter had expired. Beale agreed to

---

1. Durrett also alleged that a copy of the EEOC charge was attached to the complaint. In fact, no copy of the charge was attached to the complaint or appears elsewhere in the record.

2. The two attorneys' differing versions were recounted in affidavits submitted by each in connection with Jenkins Brick's subsequent motion for summary judgment.

call Hewlett the next week to notify him of his intentions, but he did not call and the two did not communicate further. Hewlett emphatically denies that Beale ever asked him to participate in informal discovery or told him it would not be in Durrett's best interests to dismiss the suit without pursuing discovery. He also insists that he fully cooperated with Beale in identifying the correct defendant by directing him to the evidence, including Durrett's EEOC charge, that clearly showed that Pullman Swindell was Durrett's former employer.

On January 3, 1980, Jenkins Brick filed its answer. The essence of the defense was that Durrett had never been employed by the defendant and had never filed a discrimination charge against it with the EEOC. In what it denominated a counterclaim, Jenkins Brick asserted its entitlement to attorney's fees from both Durrett and Beale on the basis that Durrett had declined to dismiss his groundless claim even after Hewlett had notified him through Beale that Jenkins Brick had never employed him.

During the succeeding months, neither party pursued discovery. On May 1, 1980, Jenkins Brick moved for summary judgment on both the employment discrimination claim and the counterclaim for attorney's fees. On the strength of unchallenged affidavits by a vice president of Jenkins Brick, Jenkins Brick's bookkeeper, and an officer of Pullman Swindell, which together established that Durrett had worked for and filed an EEOC charge against Pullman Swindell rather than Jenkins Brick, the district court entered judgment for the defendant on the employment discrimination charge.

■ As to its counterclaim, Jenkins Brick argued that it was entitled to attorney's fees from Durrett because his claim had been frivolous, unreasonable, and without foundation,[3] and from Beale because he had pursued and prolonged the litigation in bad faith. In support of its motion for summary judgment on its claim for attorney's fees, Jenkins Brick offered the affidavit of Hewlett, which we have summarized above.

The plaintiff argued in opposition that the lawsuit had been filed in the good faith belief that Jenkins Brick had been his employer, and that Durrett's claim was not frivolous, groundless, or pursued in bad faith. In support of his argument, the plaintiff offered the affidavit of David S. Beale. In addition to the account of his conversations with Hewlett which we have summarized above, Beale averred that other pressing business had prevented him from timely pursuing discovery, and that he would be filing a motion to extend the discovery deadline and to amend the complaint to name the correct defendant. No such motion was ever filed.

The district court found that Jenkins Brick had been "dragged through more than six months of unnecessary litigation because of an error that would have been avoided by mere perusal of the EEOC documents and that could have been corrected by modest factual investigation once the action had commenced." It found further that the facts met the standards of *Christiansburg Garment Co. v. EEOC*, 434 U.S.

---

3. Jenkins Brick also argued that it was entitled to a default judgment against Durrett because he failed to reply to the counterclaim, and now urges that the district court abused its discretion by failing to grant a default judgment. This contention fails. The "counterclaim" was really a premature motion for attorney's fees, predicated on the defendant's anticipated judgment on the employment discrimination claim; it was not an independent claim requiring a reply by the plaintiff. This is demonstrated by the fact that had Jenkins Brick not asserted its entitlement to attorney's fees in its answer, a claim for fees made by motion after the entry of judgment on the employment discrimination claim would have timely brought the issue before the court. *See Varnes v. Local 91, Glass Blowers Ass'n*, 674 F.2d 1365, 1368–69 (11th Cir. 1982) (rule that request for attorney's fees authorized by statute is not a motion to alter or amend a judgment, *Knighton v. Watkins*, 616 F.2d 795, 797 (5th Cir. 1980), implies that such a request is not a "new or additional claim for relief" requiring personal service under Fed.R. Civ.P. 5). Moreover, Jenkins Brick offers no authority for its contention that a trial court's refusal to enter a default judgment on facts such as these is reversible as an abuse of discretion.

412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), defining the proper circumstances for an assessment of attorney's fees against a losing plaintiff in a Title VII action. The court nonetheless declined to assess attorney's fees against Durrett for two reasons: first, that Durrett bore less responsibility than Beale for the unnecessary prolongation of the litigation; and second, that to assess fees would impose a "harsh and heavy burden" on Durrett, who had proceeded *in forma pauperis.*

Nor did the district court assess attorney's fees against Beale. The court correctly observed that there was no statutory authority for an assessment of fees against counsel in a Title VII case. It then declined to exercise its inherent power to assess attorney's fees against counsel who has willfully abused the judicial process, because Beale had not engaged in such misconduct and had disobeyed no court order.

Jenkins Brick filed a motion urging the district court to amend its judgment to assess attorney's fees against Beale, or at least to hold a hearing on the issue, and to assess fees against Durrett. It is from the denial of this motion that Jenkins Brick appeals.

## II.

Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1976) provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee....

Section 706(k) contemplates assessments of attorney's fees against losing parties, not against counsel. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 761, 100 S.Ct. 2455, 2461, 65 L.Ed.2d 488 (1980).

In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court identified the circumstances under which a prevailing defendant in a Title VII action should be awarded attorney's fees: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case

upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or "that the plaintiff continued to litigate after it clearly became so." *Id.* at 421, 422, 98 S.Ct. at 700, 701. Such a standard would suffice to deter the bringing of groundless lawsuits and to protect defendants from burdensome litigation having no legal or factual basis. *See id.* at 420, 98 S.Ct. at 700.

In this case, the district court correctly concluded that the *Christiansburg* standard had been met. Durrett's complaint against Jenkins Brick had no basis whatever, since he had never worked for or brought an EEOC charge against the defendant. That the suit may not have been brought in bad faith is irrelevant, since the action was unreasonable and without foundation. Jenkins Brick's attorney, seeking to avoid the necessity of filing an answer, apprised Durrett through his counsel of this error. Durrett could have confirmed Hewlett's representations by a cursory examination of the EEOC charge he had filed or by even a superficial investigation along the lines suggested by Hewlett. Durrett's subsequent inaction obliged Jenkins Brick to file an answer and to submit to more than six months of needless litigation. Thus, not only did Durrett file a groundless complaint, but he also continued to litigate after it became obvious that he had sued the wrong party.

The district court nonetheless declined to assess attorney's fees against Durrett. The court's principal justification for its decision was that Durrett bore less responsibility for the fiasco than did his lawyer. However accurate its appraisal of the facts, the court erred by holding, in effect, that Durrett did not bear responsibility for his counsel's actions. We adopt the reasoning of the Court of Appeals for the Second Circuit, which addressed precisely this issue when the prevailing defendants in a Title VII case sought an award of attorney's fees:

> The question becomes whether [the district court's] suggestion that it would be inequitable to burden [the plaintiffs], as

distinguished from their counsel, with an award of fees was an adequate ground for denying [the defendants'] motion.

Upon the facts of this case, we conclude that it was not. In our legal system, an attorney is his client's agent and representative; the client retains ultimate authority over the conduct of litigation. *See* ABA Code of Professional Responsibility EC 7–7 ("In certain areas of legal representation not affecting the merits of the case or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on the lawyer.") Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority. As the Supreme Court stated, in upholding the involuntary dismissal of an action in part because of an attorney's failure to appear at a pretrial conference:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R. R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

*See also United States v. Cirami*, 535 F.2d 736 (2d Cir. 1976).

Whether or not [the plaintiffs'] reliance on their attorneys' judgment was misplaced, they are legally responsible for the filing of these actions.

*Prate v. Freedman*, 583 F.2d 42, 48 (2d Cir. 1978).

■ To the considerations noted in *Prate*, we add that a rule relieving Title VII plaintiffs of responsibility for actions their attorneys take in their behalf would in many instances disserve the purpose of § 706(k) to protect employers from burdensome litigation having no legal or factual basis. In virtually all actions without legal basis, and in many actions without factual basis, it will be the plaintiff's attorney who should first recognize the insufficiency of his case. Similarly, when a plaintiff continues to litigate after it becomes clear that his claim is frivolous, unreasonable, or groundless, it will usually be his attorney who, through discovery or attention to the developing case law, should first recognize the necessity to discontinue the litigation. If plaintiffs in such cases were permitted to escape liability under § 706(k), the salutary effect of that provision would be diluted. Finally, in many cases, including this one, in which the plaintiff's counsel may appear to be primarily culpable, the plaintiff may find relief from the effect of our rule in the form of a malpractice action. We hold, then, that the perception that counsel was primarily at fault in filing or maintaining a frivolous, groundless, or unreasonable claim should play no role in the decision whether to assess attorney's fees against the plaintiff in a Title VII case.[4]

The district court's second justification for refusing to assess attorney's fees against Durrett was Durrett's indigency, which the court inferred from his *in forma pauperis* status. We must decide whether the district court correctly viewed Durrett's ability to pay as a factor bearing on the assessment of an attorney's fee, and, if so, whether the court properly refused to award any fee whatever because of Durrett's apparent indigency. Initially, we must determine whether our precedents altogether preclude consideration of a Title VII plaintiff's financial condition in this context.

---

**4.** In contrast to the plaintiff's financial condition, which we address next, his apparent lack of personal fault is irrelevant even to the determination of the amount of the fee award.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), we identified twelve factors which a court should consider in awarding attorney's fees to a prevailing Title VII plaintiff.[5] In *Jones v. Dealers Tractor & Equipment Co.*, 634 F.2d 180 (5th Cir. 1981), we affirmed the district court's use of the *Johnson* factors to determine the amount of an attorney's fee award to a prevailing Title VII defendant. Although the losing party's ability to pay is not among the *Johnson* factors, we do not believe that *Johnson* and *Jones* bar consideration of the plaintiff's limited ability to pay as one factor in calculating an attorney's fees award to a prevailing Title VII defendant. In *Johnson*, our focus was on the situation of the prevailing plaintiff; indeed, one of the factors we listed, the undesirability of the case, is not applicable to the situation of the prevailing defendant.[6] Therefore, that we did not include among the *Johnson* factors the losing party's ability to pay—a consideration uniquely pertinent to the losing plaintiff—is of little moment in the present context. Nor do we read our unelaborated affirmance of the application of the *Johnson* guidelines to the prevailing defendant situation in *Jones* to preclude the adjustment of those guidelines under consideration here.

Unhampered by our precedents, we hold that a district court awarding attorney's fees to a prevailing Title VII defendant should consider not only the applicable *Johnson* guidelines, but also, as a limiting factor, the plaintiff's financial resources. As the Second Circuit has noted, equitable considerations appropriately guide the determination of fee awards authorized by federal statute, and the financial resources of the paying party are one such consideration. *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028 (2d Cir. 1979). We agree with *Faraci* that in determining the size of the award, the district court should ascertain whether, in light of the plaintiff's ability to pay, a reduced assessment would fulfill the deterrent purpose of § 706(k) without subjecting the plaintiff to financial ruin. *Id.* at 1029.

At the same time, we hold that in no case may the district court refuse altogether to award attorney's fees to a prevailing Title VII defendant because of the plaintiff's financial condition. A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence. In this case, the district court erred by finding Durrett's apparent indigency justification for assessing no fee. On remand, Durrett's indigency, if established, will limit, but not eliminate, the award. Finally, we note that, particularly at this remove from the filing of Durrett's application to proceed *in forma pauperis*, that application alone will not suffice to establish a limitation on Durrett's ability to pay; just as the court will conduct a thorough inquiry to evaluate the *Johnson* factors, so must it look beyond the plaintiff's application to proceed *in forma pauperis* to determine his financial condition.

We now turn to the question of the liability of Durrett's counsel, Beale, for attorney's fees.

### III.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 54 L.Ed.2d 648 (1980),

---

5. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

6. As we explained, "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court." 488 F.2d at 719 (citations omitted).

was a civil rights action brought against Roadway Express by two former employees and one unsuccessful job applicant. When the plaintiffs' attorneys failed to comply with orders relating to discovery and the filing of briefs, Roadway Express moved to dismiss the suit and for an award of attorney's fees and costs. The district court dismissed the action with prejudice and assessed attorney's fees against the plaintiffs' lawyers, finding authority for its award in the confluence of three statutes which it thought pertinent.[7] The court of appeals vacated and remanded, holding that the statutes relied upon did not authorize the award. On certiorari, the Supreme Court affirmed the court of appeals' interpretation of the statutes, but remanded for a determination whether the lawyers' conduct of the litigation had amounted to bad faith, in which case the district court was authorized to assess attorney's fees against the lawyers in the exercise of its inherent powers. In its opinion, the Court characterized the circumstances justifying an award on such a basis.

The Court recalled its earlier holding that the courts have inherent power to "assess attorney's fees [against a party] for the 'willful disobedience of a court order . . .' or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .'" *Id.* at 766, 100 S.Ct. at 2464, *quoting Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) (citations omitted). Nor was this bad faith exception to the general prohibition against awards of attorney's fees restricted to cases where the action was filed in bad faith; bad faith might be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation. 447 U.S. at 766, 100 S.Ct. at 2464.

From these principles, the Court inferred that in narrowly defined circumstances, federal courts have inherent power to assess attorney's fees against counsel:

The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. . . . Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers.

*Id.* (citation and footnotes omitted). On remand, the district court was to make a finding whether counsel's conduct constituted or was tantamount to bad faith, a prerequisite to any sanction under the court's inherent powers.

In this case, the district court, citing *Roadway Express*, concluded, "Although the court holds the inherent power to assess attorney's fees for willful abuse of the judicial process, plaintiff's counsel has engaged in no such misconduct. The sanction of an attorney's fees award should not be imposed lightly, and plaintiff's counsel has violated no order of the court." As we read the district court's order, the court understood *Roadway Express* to authorize an assessment of attorney's fees against counsel only when counsel has violated a court order or engaged in similar contumacious behavior. Although *Roadway Express* itself did involve such misconduct, we believe that the district court adopted too restrictive a view of the circumstances justifying a federal court's exercise of its inherent power to assess attorney's fees against counsel.

■ The Court in *Roadway Express* derived the inherent power to assess attorney's fees against counsel from its holding in *Alyeska Pipeline* that the courts may assess attorney's fees against a party proceeding in bad faith, and from the fact that the power of a court over members of its

---

7. The statutes relied upon were 42 U.S.C. §§ 1988 and 2000e–5(k), both of which allow the prevailing party to recover attorney's fees "as part of the costs of litigation," and 28 U.S.C. § 1927, which permits a court to tax the excess "costs" of a proceeding against a lawyer "who so multiplies the proceedings . . . as to increase costs unreasonably and vexatiously. . . ."

bar is at least as great as its authority over litigants. *Alyeska Pipeline* authorized the assessment of attorney's fees against a party for the willful disobedience of a court order *or* when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. From this it follows that the Court in *Roadway Express* intended to authorize the assessment of attorney's fees against counsel who has either willfully disobeyed a court order or acted in bad faith, vexatiously, wantonly, or for oppressive reasons. This view is buttressed by the fact that the *Roadway Express* Court, having labeled the *Alyeska Pipeline* doctrine the "bad faith" exception to the general prohibition against awards of attorney's fees, 447 U.S. at 766, 100 S.Ct. at 2464, remanded the case for a determination whether counsel's conduct had been tantamount to "bad faith." *Id.* at 767, 100 S.Ct. at 2465. We conclude, then, that under *Roadway Express*, a federal court's inherent authority to assess attorney's fees against counsel is coextensive with its inherent authority to assess fees against a party, and that the Court's statement that fees may be assessed against counsel who "willfully abuse judicial processes," *id.* at 767–68, 100 S.Ct. at 2464, was not intended as a further limitation on the power. Since the district court tested Beale's liability for attorney's fees by too narrow a gauge, we vacate the court's order as to Beale and remand for further proceedings.

We do not prejudge whether Beale has conducted this litigation in bad faith, vexatiously, wantonly, or for oppressive reasons. Whether he has may depend upon the resolution of his disagreement with Hewlett concerning their communications in December 1979. We hold only that the district court erred by holding that Beale's compliance with court orders and with the form of court procedure precluded his liability for attorney's fees. On remand, the district court will conduct a hearing to enable it to find in accordance with this opinion whether Beale's conduct was in violation of the standard established in *Roadway Express*.

REVERSED in part, VACATED in part, and REMANDED.