George BADILLO, Plaintiff-Appellee,

v.

CENTRAL STEEL & WIRE COMPANY, Defendant-Appellant.

No. 82–2438.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1983.

Decided Sept. 23, 1983.

Rehearing and Rehearing En Banc Denied Oct. 24, 1983.

Marian C. Haney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellant.

Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Defendant Central Steel & Wire Company (Central) appeals from the denial of its motion for attorneys' fees and costs in a Title VII action in which it prevailed. Central argues that Badillo's suit was so patently frivolous that the district court abused its discretion in failing to award fees and costs. We disagree and affirm the decision of the district court.

## I.

The plaintiff, George Badillo, a Mexican, was employed by Central from 1973 until his termination in 1977 for allegedly cursing at a foreman. Shortly after his termination Badillo filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Following investigation, the EEOC found reasonable cause to believe that the charge was true.

Based on this finding, Badillo, on May 23, 1979, filed a *pro se* action under Title VII and 42 U.S.C. § 1981. On September 25, 1979, counsel appeared for plaintiff, and on October 9, 1979 filed an amended complaint under Title VII and 42 U.S.C. § 1981 seeking class-wide relief on behalf of hispanics, blacks, and women, alleging discriminations in terms of hiring, training, placement, assignments, promotion, transfer, termination, layoff, and discipline. The complaint further alleged that Badillo and other class members had been intimidated, threatened, and verbally abused.

On August 25, 1980, the district court struck Badillo's asserted class claims on behalf of women and blacks, and his claims relating to hiring practices, for lack of standing. The court also held that Badillo lacked standing to assert any claim that did not directly affect Badillo or his class. A second amended complaint was filed on October 8, 1980 which did not assert any claims to hiring or women, but instead alleged class claims based on "national origin and/or race." On February 3, 1981, the district court struck class claims relating to training, placement, assignments, promotion, and transfer, holding that Badillo was a suitable class representative for claims regarding termination, layoff, and discharge.

On March 24–25, 1981, Central, with the aid of a translator, took Badillo's deposition. At that deposition Badillo contradicted all of his individual claims of discrimination *except* for the charge relating to his termination and could only offer hearsay testimony concerning threats and intimidation of other minority employees.

On July 24, 1981, the district court granted summary judgment on all individual claims except for the claim regarding Badillo's termination. The court also granted summary judgment with respect to all § 1981 class claims except those relating to discriminatory termination, discipline, and layoffs. On November 23, 1981, Badillo's counsel withdrew *all* remaining class claims leaving Badillo's termination as the only issue of the case.

Further discovery was then taken by both sides. During this period Badillo's counsel once failed to inspect documents gathered by Central pursuant to a production request. In another incident, there was no response to interrogatories served by Central.

On March 2, 1982, Central filed a motion for summary judgment. Badillo opposed the motion with only a four-page legal memorandum and no counter-affidavits.

---

* Senior District Judge William J. Campbell for the Northern District of Illinois, is sitting by designation.

On May 26, 1982 the district court granted the motion and dismissed the case. Central appeals from the subsequent denial of its motions for attorneys' fees and costs.

## II.

Central argues that it is entitled to attorneys' fees and costs under five separate theories. Central contends that fees and costs should be assessed against Badillo through (a) the provisions of 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988; (b) the inherent equitable powers of the court to assess fees against a non-prevailing party for bad faith conduct; and (c) the provisions of Rule 54(d) of the Federal Rules of Civil Procedure. Central also contends that fees and costs should be assessed against Badillo's counsel through (d) the provisions of 28 U.S.C. § 1927, and (e) the provisions of Fed.R.Civ.P. 11.

### A. *42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988*

It is Central's contention that Badillo's lawsuit was frivolous, unreasonable, and groundless from its inception. Central points to the dismissal of the class-base claims, the dismissal of the first amended complaint, and the subsequent grant of summary judgment, based in part on Badillo's own deposition testimony. Central thus seeks fees based upon 42 U.S.C. § 2000e–5(k) which provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States will be liable for costs the same as a private person.

In the alternative, Central bases its claims for fees on the provisions of 42 U.S.C. § 1988 which this Court has held to be coterminous with 42 U.S.C. § 2000e–5(k). *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981). Central acknowledges that the denial of attorneys' fees in general is a matter for the sound discretion of the trial judge, *Harrington v. DeVito,* 656 F.2d

264, 266 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982), but nonetheless urges that the trial judge abused his discretion based on the record in this case.

Unlike the strong policy considerations favoring awarding attorneys' fees to prevailing plaintiffs in Title VII cases, *see Ablemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *Bugg v. International Union of Allied Industrial Workers of America, Local 507 AFL–CIO,* 674 F.2d 595, 597–600 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982), prevailing defendants may receive fees only in very narrow circumstances. *Bugg; Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir.1978). The Supreme Court has stated: "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978). In *Christiansburg* the Court cautioned against applying even this standard through hindsight lest uncertain, but meritorious, claims be discouraged by the threat of being saddled with a defendant's legal fees. *Id.*

■ Attorneys' fees have been awarded to prevailing defendants under § 2000e–5(k) in two general sets of circumstances. First, such an award may be proper where the plaintiff proceeds in the face of an unambiguous adverse previous ruling. For example, the court in *Sek v. Bethlehem Steel Corp.,* 421 F.Supp. 983 (E.D.Pa.1976), awarded attorneys' fees to the prevailing defendant where the plaintiff's claims had been found to be baseless by both the state human relations commission and the EEOC, and where plaintiff's own attorneys withdrew their appearances advising him that they did not think he could present a *prima facie* case. *See also Davis v. Roadway Express, Inc.,* 590 F.2d 140 (5th Cir.1979) *on re'h* 621 F.2d 775 (5th Cir.1980); *Prate v. Freedman,* 583 F.2d 42 (2d Cir.1978); *Carrion v. Yeshiva University,* 535 F.2d 722 (2d

Cir.1976); *Flora v. Moore*, 461 F.Supp. 1104 (D.Miss.1978); *Davis v. Braniff Airways, Inc.*, 468 F.Supp. 10 (N.D.Tex.1979).

Awards under § 2000e–5(k) may also be proper where a plaintiff is aware with some degree of certainty of the factual or legal infirmity of his claim. The court in *Sierra v. Datapoint Corp.*, 459 F.Supp. 668 (W.D. Tex.1978), awarded fees and costs under this theory where the plaintiff knew at the time of her discharge that she had been terminated for her own misconduct and where four years of discovery failed to produce any relevant evidence. *See also Durrett v. Jenkins Brickyard*, 678 F.2d 911 (11th Cir.1982); *Reed v. Sister of Charity of the Incarnate Word of Louisiana, Inc.*, 447 F.Supp. 309 (W.D.La.1978).

Accordingly, the courts have been careful to distinguish between claims that were ultimately found to be without merit and those "frivolous, unreasonable or groundless" claims within the meaning of *Christiansburg*. *See EEOC v. Fruehauf Corp.*, 609 F.2d 434 (10th Cir.1979), *cert. denied*, 446 U.S. 965, 100 S.Ct. 2941, 64 L.Ed.2d 824 (1980); *Little v. Southern Electric Steel Co.*, 595 F.2d 998 (5th Cir.1979); *Mosby v. Webster College*, 563 F.2d 901 (8th Cir.1977); *EEOC v. Children's Hospital of Pittsburgh*, 556 F.2d 222 (3d Cir.1977). As a result fees that have been assessed have been limited to situations where plaintiff's conduct was abusive, or merely a disguised effort to harass or embarrass the defendant.

This Court most recently interpreted § 2000e–5(k) in *Bugg v. International Union of Allied Industrial Workers of America, Local 507 AFL–CIO*, 674 F.2d 595 (7th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982). In *Bugg* we held a successful Title VII defendant was entitled to an award of attorneys' fees for a frivolous and unreasonable appeal brought without foundation. In that case, one of the plaintiff's four claims was dismissed for failure to file a proper claim before the EEOC, while another claim was dismissed for failure to file a timely claim with the EEOC. The remaining claims were subsequently dismissed under Fed.R.Civ.P. 41(b).

This Court awarded fees for appellate work noting the district court's explicit finding that the plaintiff's case was entirely groundless, and that the plaintiff knew or should have known that his claims were frivolous long before trial since his court-appointed counsel had withdrawn and clearly informed him that his case was "wholly lacking in merit." 674 F.2d at 600.

■ Under these theories, and under the facts and circumstances of this case, we hold that the district court did not abuse its discretion in denying Central's motion for attorneys' fees. As an initial *pro se* litigant Badillo brought his Title VII action largely based upon the EEOC's determination that reasonable cause existed to·believe that Badillo's charges were true. This determination was phrased in broad terms in finding reasonable cause to believe that Central discriminated against Spanish surnamed individuals and blacks in both hiring and firing as well as through intimidation on the job.

The district court in denying attorneys' fees held that the EEOC's determination was probative on the question of whether the lawsuit was frivolous, although it was not binding. Appellants suggest that the district court erroneously relied on *Bowers v. Kraft Foods Corp.*, 606 F.2d 816 (8th Cir.1979), and *Evans v. American Import Merchants Corp.*, 82 F.R.D. 710 (S.D.N.Y. 1979), in giving the EEOC determination *any* weight at all. While appellant is correct that in those cases the plaintiffs brought only those claims *directly* addressed by the EEOC and did not engage in such a self-destructive deposition as did Badillo, these factors affect the weight to be given to the EEOC decision, and not its probative value. We feel that the district court could properly consider the EEOC decision in exercising its discretion in this area. The content of the EEOC finding is an especially relevant criterium where the case was initiated by a *pro se* litigant. Therefore, we cannot hold that the actions of the district court amounted to an abuse of discretion in this regard.

Nor do we find the continued assertion of class-based claims to be grounds for the award of fees. Badillo's first amended complaint, filed by counsel after their entrance to the case, was dismissed on the grounds that Badillo did not have standing to assert claims on behalf of others that did not affect him. The second amended complaint complied with at least the letter of the court's order deleting references to all claims relating to women and those claims relating to hiring practices. While other claims in the second amended complaint were eventually stricken, the court did permit class claims relating to layoffs, discipline, and termination to remain in the case. When discovery evidence pointed to the ultimate lack of merit in these claims, *plaintiff* then dropped these claims. Under these circumstances it was within the discretion of the district court to deny attorneys' fees.

**B.** *Inherent Powers of the Court to Impose Sanctions for Bad Faith Conduct*

■ Central also contends that it may recover its attorneys' fees under the general equitable powers of the court to impose sanctions for "bad faith" conduct. Although the general American rule, in the absence of statute, is that each party must pay its own lawyers, the courts have carved out a limited exception for a party who litigates in subjective bad faith. However, the standard of bad faith awards is quite stringent and such an award is appropriate "only if the trial court finds both that the litigant who filed the claim or motion acted in subjective bad faith, and that the claim or motion was unsupported by probable cause." Comment, *Attorneys' Fee Awards to Complex Litigation Defendants: Striking a Balance,* 77 Nw.U.L.Rev. 818, 826 (1983). *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 182 (D.C.Cir.1980); *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980); *Browning De-*

*benture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977). Under such a standard it is clear that Central cannot prevail in its quest for attorneys' fees via this route. There is no element of subjective bad faith present in Badillo's conduct. There is, at most, a confusion as to the requirements of a *prima facie* Title VII claim and a misplaced reliance on the decision of the EEOC. This is insufficient to cause us to overturn the refusal of the district court to exercise its inherent powers on the question of attorneys' fees.

**C.** *Rule 54(d)*

Central also contends that it is entitled to its taxable costs under Rule 54(d) of the Federal Rules of Civil Procedure which provides in part that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d). While the power to award costs under this rule is a matter within the sound discretion of the district court, *Clark v. Universal Builders, Inc.,* 501 F.2d 324 (7th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974), Central contends that the district court abused its discretion by impermissibly considering Badillo's indigency as a factor in denying costs.

■ We feel that it is within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d). This Court has recently stated that the inability to pay is a proper factor to be considered in granting or denying taxable costs. *Delta Airlines, Inc. v. Colbert,* 692 F.2d 489 (7th Cir.1982). *Cf. Durrett v. Jenkins Brickyard,* 678 F.2d 911, 917 (11th Cir.1982). Mindful of the presumption that costs are to be awarded to the prevailing party under this rule, *Popeil Brothers, Inc. v. Schick Electric, Inc.,* 516 F.2d 772 (7th Cir.1975), we hold that this presumption may be overcome by a showing of indigency.[1]

---

**1.** Central also argues that this case should be remanded for a hearing as to Badillo's financial condition because of alleged inconsistencies be-

tween an affidavit filed on August 13, 1982 and deposition testimony taken in March 1981.

## D. *28 U.S.C. § 1927*

Central's motion for attorneys' fees and costs to be assessed against Badillo's counsel was based in part on 28 U.S.C. § 1927 which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Because of its penal nature, 28 U.S.C. § 1927 has been strictly construed. This Circuit has recently stated that sanctions under § 1927 are limited to "situations where the suit was without either a legal or factual basis and the attorney was or should have been aware of this fact." *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 794 (7th Cir.1983). Accordingly, we have held the power to assess costs on opposing counsel exists in response to "a serious and studied disregard for the orderly process of justice." *Overnite Transportation*, 697 F.2d at 795, *citing Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969). *See also United States v. Ross*, 535 F.2d 346 (6th Cir.1976) (costs under § 1927 proper only if counsel's conduct was intentional or in reckless disregard of duty owed to the court); *West Virginia v. Charles Pfizer & Co.*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) (sanctions under § 1927 are highly unusual and require clear showing of bad faith).

 Although appellant is correct that the trial judge held there were no genuine issues of material fact, the facts and circumstances do not present such an extreme case as to permit the court to tax costs against the non-prevailing attorneys. *See, e.g., Miles v. Dickson*, 387 F.2d 716 (5th Cir.1967). While the conduct of Badillo's

attorneys is not to be commended, under the stringent standards for the imposition of costs and fees against counsel we cannot hold that the district court abused its discretion in denying sanctions under 28 U.S.C. § 1927.

## E. *Fed.R.Civ.P. 11*

 Central claims in the alternative that it is entitled to an award of fees and costs against Badillo's attorneys under Rule 11 of the Federal Rules of Civil Procedure. While Rule 11 does provide that pleadings filed in bad faith may be stricken as "sham," it nowhere explicitly provides for an award of attorneys' fees. If any basis for such an award exists in Rule 11, it must derive from the general language in Rule 11 which states: "For a willful violation of this rule an attorney may be subjected to appropriate disciplinary action." Fed.R. Civ.P. 11.

This Court has not previously addressed the question of whether Rule 11, by its very terms, permits an award of attorney's fees and costs as an "appropriate disciplinary action." Neither the Rule itself nor the advisory committee's notes specifically address this point. However, the advisory committee's notes suggest that a court has the power under this Rule by stating that 28 U.S.C. § 1927, *see* discussion *supra* at D, remains unaffected by Rule 11. The imposition of costs and fees against an attorney for a willful violation of Rule 11 seems an appropriate sanction for conduct not rising to a level requiring suspension or disbarment of the attorney in question. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1334 (1969 & 1983 Supp.).

 In this regard two Circuit Court opinions have assessed such monetary sanctions under this Rule. *Hedison Manufacturing Co. v. NLRB*, 643 F.2d 32, 35 (1st Cir.1981); *Anderson v. Allstate Insurance Co.*, 630 F.2d 677, 684 (9th Cir.1980). Two other Circuit Courts have declined to award fees under the particular facts of the cases before them but have suggested that such a

This argument, not having been raised before the district court, is waived.

sanction is available under the proper circumstances. *Nemeroff v. Abelson,* 620 F.2d 339 (2d Cir.1980); *United States v. Standard Oil of California,* 603 F.2d 100 (9th Cir.1979). *See also LeGare v. University of Pennsylvania Medical School,* 488 F.Supp. 1250 (E.D.Pa.1980).[2] We agree with these courts and hold that Rule 11 can, and should, be utilized in this fashion under the proper circumstances.

The standards for imposing fees and costs against counsel under Rule 11 are somewhat elusive. The Second Circuit in *Nemeroff* stated that subjective bad faith on the part of counsel is the appropriate test. 620 F.2d at 350. That standard is consistent with the characterization of willful conduct, in a civil context, as discussed in *United States v. Illinois Central Railroad Co.,* 303 U.S. 239, 242–43, 58 S.Ct. 533, 534–35, 82 L.Ed. 773 (1938). *See also Aero Mayflower Transit Co., Inc. v. I.C.C.,* 535 F.2d 997, 1000–01 (7th Cir.1976). We agree that a test of subjective bad faith is proper and in accordance with the language of Rule 11 and the courts' general equitable powers in this area. Thus, we must reject Central's claim for fees under Rule 11 for lack of any showing of *subjective* bad faith on the part of Badillo's counsel.

### III.

For the foregoing reasons the decision of the district court is Affirmed.

2. District courts within our circuit have been leaders in using Rule 11 as a basis for awarding attorneys' fees as a sanction. *See, e.g., Textor v. Board of Regents of Northern Illinois University,* 87 F.R.D. 751 (N.D.Ill.1980). However, when such awards have been assessed the courts have tended to rely on their inherent equitable powers, rather than the terms of Rule 11, as the source of their authority. *McCandless v. Great Atlantic and Pacific Tea Company, Inc.,* 529 F.Supp. 476 (N.D.Ill.1982), *aff'd* 697 F.2d 198 (7th Cir.1983); *Driscoll v. Oppenheimer & Co., Inc.,* 500 F.Supp. 174 (N.D.Ill.1980).