**TRIAD ASSOCIATES, INC., d/b/a Guardian Security, JK Guardian Security Services, Inc., and K & J Management, Inc., Plaintiffs,**

v.

**CHICAGO HOUSING AUTHORITY, et al., Defendants.**

**No. 87 C 5096.**

United States District Court, N.D. Illinois, E.D.

June 15, 1988.

John L. Gubbins, John L. Gubbins & Assoc., Ltd., Chicago, Ill., for plaintiffs.

Anthony J. Fusco, Jr., Chicago Housing Authority, Thomas E. Johnson, Law Office of Thomas E. Johnson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is presently before the court on defendants' motion for Rule 11 sanctions and/or attorneys' fees under 42 U.S.C. § 1988. For the reasons stated herein, defendants' motion is granted in part.

### FACTS

This litigation arose from a contract dispute between plaintiff security firms and the Chicago Housing Authority ("CHA"). Plaintiff, Triad Associates, Inc. ("Triad") first began providing security services for the CHA in 1982, under a handshake agreement. In their seven-count complaint, plaintiffs alleged that, subsequent to Renault Robinson's appointment as Chairman of the CHA Board, defendants implemented a policy to drive white contractors from the CHA and to replace them with black contractors who supported the political ambitions of Robinson and the late-Mayor Harold Washington's administration.

Pursuant to this policy, plaintiffs alleged that Robinson, with the aid of Cramer, Thomas, Gardner, and Allen, sought to replace plaintiffs with Digby Detective and Security Agency ("Digby") and GEJ Security ("GEJ"). Both firms allegedly supported the late-Mayor Washington and his administration, and although not clearly stated, a fair inference drawn from the complaint is that both Digby and GEJ were owned by black persons.

In furtherance of their efforts to oust plaintiffs, defendants allegedly engaged in numerous tactics, including: (1) replacing Triad with Digby at CHA's senior housing

operations on September 25, 1983, with only two-days notice; (2) falsely maintaining that Victor Vrdolyak (former Chicago Alderman Edward Vrdolyak's brother) owns and runs plaintiffs' businesses; (3) subjecting plaintiffs to extensive audits and inspections, including a November, 1984 on-site inspection, while not requiring black owned security firms to submit to similar audits; (4) blocking the award to plaintiffs of a CHA contract for security services following January, 1985 bidding until bid requirements could be lowered to permit Digby and GEJ to qualify thereunder; (5) upon rebid, awarding contracts to Digby and GEJ in addition to plaintiffs, although the bids of Digby and GEJ were the highest of all submitted; (6) attempting to prevent plaintiffs from undertaking the contract awarded them by requiring immediate posting of a performance bond and proof of insurance, while modifying the contracts of Digby and GEJ to allow additional time for compliance, and refusing to confirm the start date of plaintiffs' contract, although Digby and GEJ were given written confirmation; (7) assigning to Digby and GEJ numerous CHA developments and offices formerly served by plaintiffs at lower rates; (8) refusing to make timely payments to plaintiffs pursuant to their contract, while making more frequent and timely payments to Digby and GEJ; and, (9) reducing the amount of work performed by plaintiffs while maintaining the level of work performed by Digby and GEJ, although their rates are higher than plaintiffs'.

In Count I, plaintiffs alleged that defendants' actions violated their rights to free association and speech as guaranteed by the First and Fourteenth Amendments and 42 U.S.C. § 1983. Plaintiffs alleged in Counts II and III, respectively, that defendants' actions also violated plaintiffs' rights to due process and equal protection of the law, as guaranteed by the Fourteenth Amendment and § 1983. Count IV was brought pursuant to 42 U.S.C. § 1985(3) and in it plaintiffs alleged that defendants' actions were taken pursuant to a conspiracy which was intended to and did deprive plaintiffs of their right not to be discriminated against on the basis of race and their First Amendment right to free association. Count V alleged violations of 18 U.S.C. § 1962(c) and (d), the civil RICO statute, and Counts VI and VII sounded in Illinois law.

On January 27, 1988, this court granted defendants' motion to dismiss plaintiffs' complaint in its entirety. We found that plaintiffs, as public contractors, enjoyed no First Amendment protection from termination based solely on political patronage and therefore could not state a First Amendment claim as alleged in Count I. *La Falce v. Houston,* 712 F.2d 292 (7th Cir.1983), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984); *Horn v. Kean,* 796 F.2d 668 (3d Cir.1986). Regarding Count II, we found that plaintiffs had no constitutionally protected property interest under the 1986 contract because the contract itself expressly reserved defendants' right to regulate the amount of work assigned to plaintiffs and even to discontinue plaintiffs' services altogether. Further, plaintiffs clearly cannot make out a Due Process claim as a disappointed bidder. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073 (7th Cir.1987). We found that Count III failed to state a claim under the Equal Protection Clause for two reasons. First, as stated above, terminating public contractors on the basis of political affiliation is not a constitutionally prohibited practice. Second, corporations have no racial identity and cannot be the target of alleged racial discrimination. *Village of Arlington Heights v. Metropolitan Housing Development,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Count IV was dismissed because, assuming *arguendo* that plaintiffs could have a racial identity, as "white corporations" they had no standing to assert a § 1985(3) claim. *Grimes v. Smith,* 776 F.2d 1359 (7th Cir.1985). Plaintiffs also lacked standing to assert the RICO claim alleged in Count V. *Robinson v. City Colleges of Chicago,* 656 F.Supp. 555 (N.D.Ill.1987). Finally, Counts VI and VII were dismissed for lack of pendent jurisdiction.

In the present motion, defendants ask this court to impose Rule 11 sanctions upon plaintiffs and/or to award defendants their attorneys' fees under 42 U.S.C. § 1988. Defendants contend that: (1) Counts I–IV were frivolous and not objectively warranted by existing law; (2) plaintiffs failed to conduct a reasonable inquiry into the facts prior to filing suit and consequently alleged claims that were not well-grounded in fact; and (3) plaintiffs pursued the litigation for an improper purpose. We will discuss each theory *seriatim*.

## DISCUSSION

Defendants' first theory invokes both Rule 11 and § 1988. Under § 1988, a court may award attorneys' fees to the prevailing defendant in a § 1983 suit, if the court finds that plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *Hermes v. Hein*, 742 F.2d 350, 356 n. 7 (7th Cir.1984) (*Christianburg* standard equally applicable to 42 U.S.C. § 1988). The Seventh Circuit has held that, generally, fees will only be awarded to the prevailing defendant if the "plaintiff's conduct was abusive, or merely a disguised effort to harass or embarrass the defendant," such as "where the plaintiff proceeds in the face of an unambiguous adverse prior ruling" or "where a plaintiff is aware with some degree of certainty of the factual or legal infirmity of his claim." *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1163–64 (7th Cir.1983); *McCabe v. City of Chicago*, 593 F.Supp. 665, 668 (N.D.Ill.1984).

Under Federal Rule of Civil Procedure 11, the court must impose sanctions if it finds that the party to be sanctioned has failed to make a reasonable inquiry into either the facts or law; or, that he interposed the paper in question for some improper purpose; or, that objectively the legal theory advanced is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or, that the paper is not well-grounded in fact. *Szabo Food Service*, 823 F.2d at 1080. Although the court must impose some sanction once a Rule 11 violation has occurred, it must also exercise care not to "penalize arguments for legal evolution." *Id.* at 1082.

Defendants' first argument is that the legal theories advanced in each of Counts I–IV were foreclosed by well-established precedent prior to the filing of the complaint. In light of our dismissal of the complaint, we obviously agree that plaintiffs did not and could not state valid claims under existing law. Plaintiffs argue, however, that in each instance they based their claims on objectively reasonable interpretations of existing law or good faith arguments for the extension of existing law. In determining whether plaintiffs' complaint represents a bona fide effort to modify the law, it is necessary to carefully examine the arguments counsel later advanced. *Id.*

In support of Count I, plaintiffs argued that their First Amendment claim was not foreclosed by *La Falce, supra*, because in *La Falce* the plaintiff was merely an unsuccessful bidder for a public contract, while in this case plaintiffs had already secured a contract. Although this distinction ultimately proved unpersuasive, it is neither frivolous for purposes of § 1988 nor objectively unreasonable under Rule 11. Plaintiffs advanced reasonable arguments to distinguish their claims from those foreclosed by *La Falce* and *Horn* and should not be sanctioned for their failed attempt.

The same cannot be said, however, for the Due Process claim contained in Count II. Plaintiffs argued that they had clearly alleged a protectible property interest which defendants had diminished without Due Process by alleging the existence of a written contract and the transferring of work from plaintiffs to other firms without cause or a hearing. The fatal flaw in this argument is that the contract itself plainly and unambiguously provides that defendants are not obligated thereby to obtain from plaintiffs "any particular amount, or any amount, of service." Con-

tract, Art. 3. Plaintiffs' arguments failed to address this provision in any manner although it was dispositive of their Due Process claim. Thus, Count II was frivolous on an objective standard and was neither well-grounded in fact nor warranted by existing law. Accordingly, plaintiffs' are subject to both Rule 11 sanctions and payment of defendants' attorneys' fees under § 1988 for advancing the Count II claims.

■ In defending the Count III Equal Protection claim against the motion to dismiss, plaintiffs argued that their political claim was valid under the rational of *Bart v. Telford,* 677 F.2d 622 (7th Cir.1982). We declined to find *Bart* controlling because it centered on the First Amendment rights of public *employees* to be free from harassment based on their political affiliations and, under *La Falce, supra, contractors* do not enjoy such First Amendment protections. However, we find that plaintiffs' arguments were objectively reasonable attempts to extend the protection afforded under *Bart* to public contractors, although we declined to do so. Likewise, plaintiffs cited a number of cases to support their standing as a corporation to assert a racial discrimination claim in spite of *Arlington Heights, supra,* which we found controlling. Each of those cases involved corporations which had been classified as minority business enterprises pursuant to established guidelines and procedures and none of them involved "white corporations." Although we are not in the least persuaded that the rationale of those cases could ever extend to the instant case, plaintiffs' conduct in arguing for such an extension is not sanctionable nor is the claim utterly groundless.

■ In support of Count IV, plaintiffs argued that *Grimes, supra,* unduly limited the scope of § 1985(3) and cited cases extending protection to classes of persons other than "Negroes and their supporters." *Grimes, supra.* These cases, however, lend no support to the novel and objectively unreasonable proposition that "corporations with a white racial identity" are a protected class under § 1985(3). The central purpose of § 1985(3) was to combat the violent efforts of the Ku Klux Klan and its allies to resist and frustrate the effects of the Thirteenth, Fourteenth, and Fifteenth Amendments. *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). Although we acknowledge that § 1985(3) has been extended to classes other than Negroes, we find no objectively reasonable argument for extending its protection to "white corporations." The statute simply was never intended to apply to all alleged tortious, conspiratorial interferences with the rights of others. *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971). Thus, we find Count IV frivolous and not objectively warranted by existing law or a good faith argument for its modification. Accordingly, advancement of this claim violated Rule 11 and supports an award of defendants' attorneys' fees under § 1988.

Defendants' second theory in support of this motion is that plaintiffs failed to make a reasonable inquiry into the facts prior to filing the complaint and thus made allegations that were not well-grounded in fact, specifically: (1) that "the CHA Board voted to give plaintiffs a two-year contract" which was subsequently blocked by Robinson (am. compl. ¶ 15(d) and Ex. D thereto); (2) that black-owned security firms were not required to post a performance bond and proof of insurance (¶ 15(e)); (3) that defendants improperly transferred work from plaintiff (¶ 15(f)) and improperly reduced the amount of work plaintiffs performed (¶ 15(h)); and (4) that more timely payments were made to Digby and GEJ than to plaintiff. Defendants have presented evidence in conjunction with both this motion and their motion to dismiss tending to show the falsity of the first, second and fourth allegations. The standard under Rule 11, however, is not whether the "facts" as plead ultimately prove to be false, but whether counsel conducted an objectively reasonable investigation into those facts prior to filing the complaint such that it was reasonable to press litigation to the point of seeking discovery.

*Frantz v. U.S. Powerlifting Federation,* 836 F.2d 1063, 1068 (7th Cir.1987). In making this determination the district court must consider several factors, including: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the document; whether the case was accepted from another attorney; the complexity of the facts and the attorneys' ability to do a sufficient pre-filing investigation; and, whether discovery would have been beneficial to the development of the underlying facts. *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1435 (7th Cir.1987).

▪ In response to the first allegedly false assertion plaintiffs contend that they did not plead that the CHA board awarded them a contract, they plead that they did not award a contract. This argument ignores the plain language plaintiffs used in ¶ 15(d): "the CHA Board voted to give plaintiffs a two-year contract. (Exhibit D)." Exhibit D was entitled "Resolution No. 85–CHA." As defendants point out, had Exhibit D represented an actual resolution of the CHA Board, i.e. evidence that the Board "voted to give plaintiffs a two-year contract," there would have been a resolution number following "85–CHA," e.g. 85–CHA–*123.* CHA resolutions are a matter of public record. Although given the opportunity to describe their prefiling investigation in their response, plaintiffs have not indicated that they did anything to verify this assertion prior to representing it as a fact in their complaint. Given the relative ease with which this assertion could have been verified (or, in this case, found to be false), plaintiffs' failure to do so constitutes a Rule 11 violation.

Plaintiffs also failed to identify what, if any, investigation was made regarding the "facts" asserted in ¶ 15(g) pertaining to the enforcement of the performance bond and proof of insurance provisions of the contract. In support of their motion to dismiss, defendants submitted evidence that all three security firms were required to comply with these contractual obligations in the same manner and on the same terms. A reasonable investigation of these allegations required, at minimum, that plaintiffs contact the CHA and the other two security firms regarding the accuracy of their suspicions. It appearing that no investigation was undertaken at all, plaintiffs have again violated Rule 11.

▪ We do not find a Rule 11 violation in regard to ¶ 15(f) and (h). The quarrelsome assertion is that defendants' reduction of plaintiffs' work was improper. This is an allegation relating to defendants' motive, not an erroneous factual assertion requiring investigation.

The final allegation which defendants attack is that Digby and GEJ were paid more frequently than plaintiffs. Defendants have again submitted evidence both here and with their motion to dismiss indicating the falsity of this assertion. Plaintiffs argue that this allegation was based on information which one of plaintiffs' owners learned from representatives of Digby and GEJ at a meeting with CHA representatives. Plaintiffs argue that it was reasonable to rely on this information because of its sources and the fact that it went unchallenged by the CHA representatives. Although some follow-up investigation might have proved both helpful and wise, we cannot say that plaintiffs violated Rule 11 by relying on those representations; they arguably provided the "outline of a claim," and Rule 11 requires nothing more. *Szabo Food Service, supra,* at 1083.

▪ Defendants' final theory is that plaintiffs filed this lawsuit for the improper purpose of thwarting the CHA's plan to implement off-duty police security. Although we do find certain of plaintiffs' claims frivolous in light of existing law and certain factual allegations lacking the requisite pre-filing investigation, we are not persuaded that the suit was interposed for an improper purpose. At least Counts I and III appear to be good faith attempts to extend or modify the law and we hesitate to infer an improper motive where the record does not clearly support such a finding.

In conclusion, Counts II and IV are frivolous and not warranted by the law. Accordingly, we find that plaintiffs and their attorneys have violated Rule 11 and defendants are entitled to the attorneys' fees expended in defense of those Counts, under 42 U.S.C. § 1988 and as a Rule 11 sanction. Plaintiffs and their attorneys also violated Rule 11 by failing to conduct an independent investigation of the factual allegations contained in ¶ 15(d) and (e). As a sanction, plaintiffs and their attorneys are ordered jointly to pay defendants the attorneys' fees and expenses incurred defending against those allegations. Although defendants have submitted their attorneys' time records in conjunction with this motion, we request that they submit a record indicating only that time spent on Counts II and IV and ¶ 15(d) and (e), within two weeks of the date of this ruling. Plaintiffs shall have two weeks to respond if they so desire.