Noah R. ROBINSON and Renoja
Management Co., Inc., Plaintiffs,

v.

CITY COLLEGES OF CHICAGO, Board
of Trustees of Community College Dist.
No. 508, Oscar E. Shabat, Andrew J.
McGann, Dr. Dorothy L. Branch, Ar-
thur Valasquez, Sr., Theodore A. Jones,
Joseph B. Meegan, Salvatore G. Rotella,
Arnold P. Jones, Jr., Robert C. Rogers,
Irving B. Slutsky, Leon Finney, Jr., and
Silver Service Caterer, Defendants.

No. 86 C 6818.

United States District Court,
N.D. Illinois, E.D.

March 23, 1987.

Philip C. Parenti, Yolande M. Bourgeois, Philip C. Parenti, Ltd., Chicago, Ill., for plaintiffs.

James P. Daley, Charles G. Albert, Bell, Boyd & Lloyd, Mitchell Ware, Frank M. Grenard, Kevin T. Lee, Jones, Ware & Grenard, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This order concerns a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by all defendants except Leon Finney, Jr., and Silver Service Caterer.[1] For the reasons stated herein, defendants' motion to dismiss is granted.

---

1. City Colleges of Chicago, Board of Trustees of Community College District No. 508, Oscar E. Shabat, Andrew J. McGann, Dorothy L. Branch, Arthur Velasquez, Sr., Theodore Jones, Joseph

## I. FACTS

Plaintiff Renoja Management Company, Inc., is owned by plaintiff Noah Robinson and provides food services. The moving defendants are the board members of the City Colleges of Chicago and the City College Board (Board) which governs the activities of the City Colleges including awarding contracts. The plaintiffs allege that the defendants devised a scheme to defraud the public of its right to the honest administration of City Colleges' affairs and the faithful service of the Board in violation of the Racketeer Influenced Crime Control Act, 18 U.S.C. § 1962(b), (c) (RICO).[2] Despite an unclear explanation of the execution of the alleged scheme, the complaint does identify two episodes which make up the alleged RICO violations.

The plaintiffs allege that the first RICO episode began in late 1981 when the Board ceased contract payments for janitorial services to Immaculate Container Co., another Robinson business. Thereafter, the Board twice invited bidding on a janitorial service contract and Robinson, through yet another company, First Class Maintenance Inc., both times submitted the lowest bid. However, the Board turned the janitorial services over to its own personnel in March 1982. The complaint seems to infer that the Board's retention of the janitorial services after conducting bidding involved a fraud on the public.

The second episode occurred over a period of several months in 1986. In April, the Board invited bids for the manual and vending food services at several schools. In May, the Board awarded a three-year contract for both manual and vending food services to Silver Service Caterer (Silver Service) despite submission of the highest bid by a third Robinson enterprise, Renoja Management. According to plaintiffs, the bid submitted by Silver Services' owner, Leon Finney, Jr., misrepresented the qualifications and corporate status of Silver Service. In response, plaintiffs filed a state court suit in June against all defendants named in this action. Thereafter, the Board decided to withdraw acceptance of the Silver Service bid and elected to internally provide manual food services. Accordingly, requests for bids on manual food services were withdrawn. Simultaneously, the Board reopened bidding on the vending food operations. However, plaintiffs did not receive notice of the new bidding and, in fact, were informed that there would be no opportunities to bid. In July, the Board again reopened vending service bidding but only for a one-year contract instead of the three-year contract previously sought. Although plaintiffs received notice of this bidding, they did not respond because they could not purchase or amortize vending machines over a one-year period. Again, the complaint alludes to a fraud on the public as a result of the Board's retention of the manual food operations despite requesting bids and the effective exclusion of the plaintiffs from vending operations bidding due to the shortened contract period.

Based on these episodes, the plaintiffs filed the present suit. Counts I and II of the complaint allege violations of §§ 1962(b) and (c) of RICO. According to the complaint, the actions of the Board, Finney, and Silver Service Caterer, including a series of letters concerning the manual and vending food service contract, violated mail[3] and wire[4] fraud statutes and

---

B. Meegan, Salvatore G. Rotella, Arnold P. Jones, Jr., Robert C. Rodgers, and Irving B. Slutsky bring the instant motion. The remaining defendants, Leon Finney, Jr., and Silver Service Caterer, are represented by separate counsel and are not parties to this motion.

2. 18 U.S.C. 1962(b) provides that it shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly any interest in or control of any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(c) provides that it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

3. 18 U.S.C. § 1341

4. 18 U.S.C. § 1343.

constituted a "pattern of racketeering activity" within the meaning of § 1961(5). A third count alleges a state law claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 261 et seq.

## II. DISCUSSION

■ When considering a motion to dismiss, a court is required to take all well pleaded facts in the complaint as true and draw all reasonable inferences in plaintiff's favor. Wolfolk v. Rivera, 729 F.2d 1114, 1116 (7th Cir.1984). However, courts need not strain to find inferences favorable to plaintiffs which are not apparent on the face of the complaint. Coates v. Illinois State Board of Education, 559 F.2d 445, 447 (7th Cir.1977).

To be liable under § 1962(b), a defendant must (1) acquire or maintain (2) any interest in a control of any "enterprise" (3) through a "pattern" of (4) "racketeering activity." Violation of § 1962(c) occurs where a defendant (1) participates (2) in the affairs of an "enterprise" (3) through a "pattern" of (4) "racketeering activity." Finally, § 1964 requires an injury by reason of a violation of § 1962 for recovery of treble damages and attorneys' fees. As such, a significant overlap exists concerning what must be pleaded under either section of 1962. Defendants' motion to dismiss attacks plaintiffs' complaint on the grounds that it fails to adequately plead these common elements. Defendants' arguments will be addressed seriatim.

### A. Pleading Racketeering Acts with Rule 9(b) Particularity

Racketeering activity is defined in § 1961 to include a long list of state and federal crimes, including mail and wire fraud. The plaintiffs allege that the defendants violated the mail and wire fraud statutes during the episodes identified in the course of executing their scheme to defraud. The defendants contend that the complaint fails to state a RICO claim because the allegations of mail and wire fraud are not stated with the particularity required by Fed.R.Civ.P. 9(b).

■ Rule 9(b) requires a proper allegation of fraud to be stated with particularity with intent being averred generally. This court has interpreted Rule 9(b) in the context of RICO to require that allegations of wire and mail fraud specify the dates or contents of the wrongful communications and state how these communications relate to the alleged fraud. See Ichiyasu v. Christie, Mason & Woods Intern., Inc., 637 F.Supp. 187, 189 (N.D.Ill.1986). In addition, when pleading mail or wire fraud, specific intent and use of the mails or wires in furtherance of the scheme must be alleged. United States v. Bohonus, 628 F.2d 1167, 1172 (9th Cir.1980). The specific intent pleading requirement derives from the "scheme to defraud" requirement stated in §§ 1341 and 1343. Id. Since there can be no fraudulent scheme without specific intent, courts require plaintiffs pleading violations of the mail and wire fraud statutes to allege and prove specific intent to defraud. See e.g., id; Allington v. Carpenter, 619 F.Supp. 474, 477 (N.D.Cal. 1985).

Defendants attack plaintiffs' complaint on the following grounds: (1) the complaint lacks any allegation that the wires were used at any time; (2) the complaint lacks any allegation that the mails were used during the 1981 episode; and (3) the allegations of mail fraud during the 1986 episode lack the particularity required by Rule 9(b). Clearly, the first and second contention are meritorious. A reading of the complaint shows plaintiffs failed to plead any facts relating to defendants' use of the wires in furtherance of the alleged scheme. Further, plaintiffs plead no facts relating to the defendants' use of the mails in executing the 1981 episode. As such, the complaint fails to comply with the Rule 9(b) pleading requirements stated in Ichiyasu regarding the alleged acts of mail fraud concerning the 1981 episode and wire fraud concerning both the 1981 and 1986 episodes.

Defendants' third argument relating to deficiencies in plaintiffs' 1986 mail fraud allegations is also persuasive. Although the plaintiffs identify the dates and contents of the mailings associated with the

1986 episode, the plaintiffs fail to state how the mailings relate to the alleged fraud as required by *Ichiyasu*. Moreover, no allegation is made that the moving defendants acted with a purpose to defraud. The failure of plaintiffs to satisfy the pleading requirement of specific intent in alleging violations of § 1341 (mail fraud) renders their RICO claim regarding the 1986 episode defective. *Bohonus*, 628 F.2d at 1172; *Allington*, 619 F.Supp. at 477. Similarly, plaintiffs' allegations of wire and mail fraud concerning the 1981 and 1986 episodes fail to meet the pleading requirements of Rule 9(b). As such, plaintiffs' RICO claims against defendants are subject to dismissal.

### B. *Pleading the Pattern*

■ A crucial element in a RICO claim is the existence of a pattern of racketeering activity. A pattern "requires at least two acts of racketeering activity" not merely two acts of racketeering. *Sedima S.P. R.L. v. Imrex, Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). "Continuity plus relationship" must be established between the predicate acts for the pattern requirement to be satisfied. *Id.* Relationship can be established by showing the predicate acts have the same purpose, results, participants, victims, methods or are otherwise interrelated by distinguishing characteristics and are not isolated events. *Id.* To be sufficiently continuous, predicate acts must occur over an identified period of time so that they can be fairly viewed as separate transactions, i.e., "transactions somewhat separated in time and place." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

■ Defendants contend that the relationship between the 1981 and 1986 epi-

sodes need not be considered since the plaintiffs failed to properly plead the predicate acts. While this court agrees, it must be pointed out that significant differences between these episodes forestall relationship arguments regardless of the Rule 9(b) deficiencies. A different Board was involved, a different type of service contract was involved, and different corporations were the alleged victims. Moreover, the five-year period between the episodes is substantial and indicates the episodes were distinct incidents. Consequently, the court finds that the requisite relationship between the episodes is not shown.

■ Recognizing problems in establishing a pattern from the 1981 and 1986 episodes, plaintiffs argue that the 1986 episode alone constitutes a pattern of racketeering activity. However, despite the acknowledged relationship of the acts in this episode, the court agrees with the defendants' contention that the continuity aspect of the pattern requirement is lacking. Predicate acts may be so closely related that they lack the requisite continuity and do not satisfy the pattern requirement. *Morgan*, 804 F.2d at 976. Here, the allegedly wrongful mailings occurred within a short period of about four months and all closely related to the manual and vending food services contract. If fraud was involved, it occurred within a quick time frame, and embraced a single transaction.[5] Plaintiffs' pleadings merely break down the alleged fraud in connection with the awarding of the contract into its component parts. Such allegations clearly fail to plead the requisite continuity of criminal activity.

### C. *Pleading the Enterprise*

■ The defendants contend that the complaint is defective in that it identifies

---

**5.** Contract bidding is a complicated process where terms of the contract may change at various stages and yet the bids relate to the same contract. The multiple steps and multiple bidders generate many letters which account for the plaintiffs' allegation of so many predicate acts. However, the greater numbers of possible fraudulent acts generated by a complex transaction "does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time

and place." *Morgan*, 804 F.2d at 976. The present case is analogous to *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir.1986), where the court held that the plaintiff failed to sufficiently allege a pattern of racketeering activity. The case involved an alleged fraud in a single acquisition of stock worth over $960,000. The plaintiff pointed to multiple predicate acts but since they occurred over a short time (several months) and all clearly related to the acquisition, the court could not find the requisite continuity.

the Board as both the enterprise and a person (defendant) under §§ 1962(b) and (c). Clearly, the definitions of "enterprise" and "person" are broad enough to encompass the Board.[6] However, the complaint's simultaneous casting of the Board as an enterprise and person under §§ 1962(b) and (c) does not comport with previous interpretations of the statutes.

The Seventh Circuit settled the issue of whether an entity could be both the "enterprise" and "person" under § 1962(c) in *Haroco Inc. v. American National Bank,* 747 F.2d 384 (7th Cir.1984) aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The court found that the language of § 1962(c) contemplates that the person be distinct from the enterprise. *Id.* at 400. The requirement in § 1962(c) that the person be employed by or associated with the enterprise implies the need for separate entities. *Id.* Accordingly, the court held that in a civil RICO claim under § 1962(c) the same entity *cannot* be both a RICO defendant and the enterprise. *Id.* at 401–02. In light of *Haroco,* Count I is clearly defective in naming the Board as both the enterprise and person under § 1962(c).

Plaintiffs' confusion concerning the ability of an entity to play a dual role under § 1962(c) seems to evolve from the Seventh Circuit's analysis of § 1962(a). In *Masi v. Ford City Bank and Trust Co.,* 779 F.2d 397 (7th Cir.1985), the court adopted dicta in *Haroco* which recognized that the language of § 1962(a) does not require or imply that the enterprise and person be distinct. *Id.* at 401. The court found that prohibition in § 1962(a) on the use of income from racketeering in the operation of the enterprise implied that a single entity could fill both roles. *Id.* The person liable could be a corporation using the proceeds of a pattern of racketeering activity in its operations. *Id.* As such, § 1962(a) provides relief where an enterprise is the perpetrator rather than the victim of racketeering activity. *Id.* Plaintiffs argue that

relief from a perpetrating enterprise should also be available under § 1962(c). However, this clearly ignores the *Haroco* interpretation of § 1962(c) requiring separate entities. Section 1962(c) contains none of the language in § 1962(a) suggesting that the liable person and the enterprise can be identical. Accordingly, this court must reject the contention in Count I that the Board may be held liable for conducting its own affairs through a pattern of racketeering activity.

■ Yet, Count I does not fail entirely in pleading the enterprise as Count I also alleges that the individual Board members violated § 1962(c) by conducting Board affairs through a pattern of racketeering activity. Such an allegation is sufficient since § 1962(c) requires only some separate and distinct existence of the person and enterprise. *Haroco,* 747 F.2d at 402. Certainly, an individual Board member exists apart from the Board itself. Furthermore, the plain meaning of the terms supports finding that the members are persons distinct from the Board enterprise. A finding otherwise would eviscerate § 1962(c) because individuals closely identified with enterprises could escape RICO liability despite conducting racketeering activity through the enterprise. However, this bit of correct pleading fails to rescue Count I due to its other defects.

The issue of whether a person and enterprise must be separate for § 1962(b) actions was addressed in *Bruss v. Allnet Communications Services, Inc.,* 606 F.Supp. 401 (N.D.Ill.1985). In *Bruss,* the court focused on the requirement in § 1962(b) that the person acquire or maintain an interest in or control of an enterprise. The court found that the language implied that the person acquiring an interest in or control of an enterprise must be separate from the enterprise. *Id.* at 407. Furthermore, the court pointed out that § 1962(b) does not refer to the use of funds in the "operation" of the enterprise as in

---

**6.** The term "person" includes "any individual or entity capable of holding legal or beneficial interest in property." 18 U.S.C. § 1961(3). The term "enterprise" includes "any individual, part- nership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

§ 1962(a) and, therefore, it is unlikely that the legislature intended § 1962(b) to cover a corporation using racketeering proceeds in its operations. *Id.* The court concluded that in § 1962(b) action, the person liable and the enterprise alleged must be two distinct entities. *Id.* This court accepts the reasoning in *Bruss* and, therefore, finds Count II defective in naming the Board as person and enterprise under § 1962(b).

■ More importantly, Count II fails entirely because of a more fundamental flaw. Plaintiffs fail to name a person who acquired or maintained any interest or control of the Board *through a pattern of racketeering activity* as required by § 1962(b). Board members acquire and maintain control over the Board through the political process and not through racketeering activity. The complaint contains no allegations that anyone acquired or maintained their Board positions through illegal means. As such, Count II fails to state a claim under the plain meaning of the terms of § 1962(b).

### D. *Pleading Injury*

■ In order to recover under RICO, a plaintiff must have been injured by the conduct constituting the RICO violation. *Sedima,* 105 S.Ct. at 3285–86. Further, § 1964(c) imposes a proximate cause requirement in that injury must relate to the violative conduct. *Haroco,* 747 F.2d at 398. Here, plaintiffs claim they were economically injured because the defendants' conduct deprived them of the benefit of a bargain that was properly theirs. Thus, to establish a RICO injury, plaintiffs must show they had a right to the contract. Plaintiffs' complaint, however, fails to substantiate such a right.

By operation of statute, the Board maintains total discretion in awarding contracts for food services since the board of any community college district is given the option to provide, purchase, lease or contract for auxiliary services related to the operation of a college. Ill.Rev.Stat., ch. 122, ¶ 103–31.1. More importantly, the Board has total discretion in conducting competitive bidding for food service contracts because such contracts involve receipts from the bidders. The Board is only required to conduct competitive bidding for *expenditures* in excess of $5,000. Ill.Rev.Stat., ch. 122, ¶ 103.27.1. As such, the Board had the power to set the terms of the manual and vending food services bids and to award the contract as the Board saw fit.

■ The defendants contend that the Board's discretion regarding food service contracts forestalls the plaintiffs' claim to entitlement to the contract. Further, defendants argue plaintiffs are precluded from asserting any entitlement to the vending services contract because plaintiffs have admitted they were incapable of performing the one-year contract ultimately solicited by the Board. Defendants argue that without a right to the contract, plaintiffs have suffered no injury. Plaintiffs respond to the foregoing arguments by asserting that provisions of the 1980 State Governmental Reorganization Revisory Act, Ill.Rev.Stat., ch. 122, ¶ 103–27.1 and the Illinois Purchasing Act, Ill.Rev.Stat., ch. 127, ¶ 132.2, establish their entitlement to the contract.

This court rejects plaintiffs' request to extend Ill.Rev.Stat., ch. 122, ¶ 103–27.1 to situations involving the receipt of funds. A federal district court may not restructure state laws or give them an interpretation that cannot be fairly drawn. *Boston Chapter, NAACP, Inc. v. Beecher,* 423 F.Supp. 696, 699 (D.Mass.1976). The statute in question is clearly meant to deal with purchases by a board and cannot be fairly interpreted to cover receipts. The plain meaning of the statute requires the court to hold that the statute applies only to purchases of goods or services.

This court also rejects the contention that the state policy of competitive bidding, recited in the Illinois Purchasing Act, Ill. Rev.Stat., ch. 127, ¶ 132.2, applies to the instant case. The Illinois Purchasing Act does not apply to state agencies created by statute where the act creating the agency specifies purchasing procedures including competitive bidding requirements. Ill.Rev. Stat., ch. 127, ¶ 132.13. Since competitive

bidding requirements for the Board are specified in the part of the act creating the Board, Ill.Rev.Stat., ch. 122, ¶ 103–27.1, the Illinois Purchasing Act does not apply to the Board. As such, the Board's discretion in competitive bidding for good service contracts is unaffected by the Illinois Purchasing Act.. Plaintiffs have shown no right to the contract and, therefore, cannot establish an injury.

## CONCLUSION

The hurdles in RICO have proven insurmountable for the plaintiffs. First, the plaintiffs have not pleaded the predicate acts of mail and wire fraud with sufficient Rule 9(b) particularity. Second, the plaintiffs fail to plead a pattern of racketeering activity because they do not establish the requisite continuity plus relationship between the predicate acts. Third, the plaintiffs fail to plead distinct entities as the enterprise and person as required by § 1962(b) and (c). Finally, the plaintiffs fail to allege any injury since they cannot show a right to the food service contract. Accordingly, this court grants the defendants' motion to dismiss plaintiffs' RICO claims and dismisses plaintiffs' remaining state law claim for lack of pendent jurisdiction.

IT IS SO ORDERED.