Michael **BARKMAN**, individually and on behalf of all the others similarly situated, Plaintiff,

v.

**WABASH, INC.,** Kearney–National, Inc., Dyson–Kissner–Moran Corporation, K–N Holdings, Inc., John Moran, Bushrod Burns, Jr., Richard Donovan, William Boyd, Jack Hosler, E. Robert Thomas, Jr., Frank E. Peters, Jr., Dean Witter Reynolds, Inc., and Blyth Eastman Paine Webber, Inc., Defendants.

No. 85 C 611.

United States District Court, N.D. Illinois, E.D.

Oct. 29, 1987.

---

Edward T. Joyce, Colleen Tyree, Joyce & Kubasiak, Stephen B. Diamond, Beeler, Schad & Diamond, P.C., Chicago, Ill., for plaintiff Barkman.

James M. Amend, Kirkland & Ellis, Chicago, Ill., for defendants Wabash, Inc., Kearney–National, Inc., K–N Holdings, Inc., and Dyson–Kissner–Moran Corp.

Michael W. Coffield, Kevin M. Flynn, Paul Donahue, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendants Donovan, Boyd, Hosler and Thomas.

James J. Moylan, James J. Moylan, and Associates, Ltd., Chicago, Ill., for defendants Moran and Burns.

L. Andrew Brehm, Michael B. Roche, James D. Adducci, Schuyler, Roche & Zuriner, Chicago, Ill., for defendant Blyth Eastman Paine Webber, Inc.

Harold C. Hirshman, Alan S. Gilbert, Steven E. Kaplou, Patricia W. Hatamyar, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant Witter Reynolds, Inc.

Michael Stick, Gerald Salterelli, Sue A. Payne, Butler, Rubin, Newcomer, Saltarelli & Boyd, Chicago, Ill., for defendant Peters.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is presently before the court on two motions of the plaintiff. The first motion seeks to vacate Judge Williams' May 23, 1986 order dismissing Counts VIII, IX, X and XI of the Amended Complaint. The second motion seeks class certification. For the reasons stated herein, plaintiff's motion to vacate is granted in part and denied in part; plaintiff's motion for class certification is granted subject to the condition explained herein.

### FACTS

Plaintiff, Michael Barkman, a former shareholder of defendant, Wabash, Inc. ("Wabash"), brought this action on behalf of himself and other former Wabash shareholders. Plaintiff's claims arise out of the acquisition of Wabash by defendant Kearney–National, Inc. ("Kearney"). The acquisition was effectuated in part through a tender offer to Wabash shareholders by K–N Holdings, Inc. ("K–N"), Kearney's wholly owned subsidiary established expressly to conduct the tender offer.

Plaintiff sues Wabash, K–N, Kearney, and Dyson–Kissner–Moran Corporation ("DKM"), a company which owns a substantial equity interest in Kearney. Also named as defendants are several officers and directors of these corporations. The corporations and the named officers and directors will be referred to in this memorandum opinion as the Wabash defendants. Plaintiff also sues Frank E. Peters, a former Wabash officer who is not one of the Wabash defendants. Finally, plaintiff sues Dean Witter Reynolds ("Dean Witter"), the deal manager for the tender offer, and Blythe Eastman Paine Webber, Inc. ("Paine Webber"), who was retained by Wabash to render an opinion on the fairness of the tender offer.

Plaintiff's complaint is substantially similar to an earlier filed class action, *Swanson v. Wabash*, 577 F.Supp. 1308 (N.D.Ill. 1983). That action resulted in a settlement of the individual's claim. No settlement was effected for the class, and although a class was conditionally certified, no class was ever actually certified because of Swanson's failure to add another named plaintiff. All of the current defendants, except Frank E. Peters, Dean Witter, and Paine, Webber, Inc., were defendants in *Swanson*.

In her May 23, 1986 opinion, Judge Williams dismissed several Counts of plain-

tiff's amended complaint. Plaintiff seeks to reinstate only Counts VIII, IX, X, and XI, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Judge Williams held that a two-year statute of limitation period was applicable to plaintiff's RICO claims and, accordingly, dismissed those counts on the grounds that they were time barred. Subsequently, the Supreme Court held that the statute of limitations for an action brought under RICO is four years. *Agency Holding Corp. v. Mally–Duff & Assoc.,* — U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Thus, the first issue which the instant motion presents is whether the Supreme Court's decision in *Agency Holding* should apply retroactively to this case; and, if so, the second issue is whether Counts VIII, IX, X, and XI state claims upon which relief can be granted.

## DISCUSSION

### I. Retroactive Application of *Agency Holding*

■ In deciding the first issue, the general rule is that Supreme Court decisions are given full retroactive application. *Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). Therefore, the party seeking prospective-only application bears the burden of proving that such limited application is justified. *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1288 (7th Cir.1980); *Jimenez v. Weinberger,* 523 F.2d 689, 704 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). The circumstances under which a judicial decision will be denied full retroactive effect are defined in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must, * * weigh the merits and demerits in each case by

looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.,* at 106–07, 92 S.Ct. at 355. Unless the defendants can show that all three *Chevron* factors favor prospective-only application of *Agency Holding* to the case at bar, plaintiff must prevail on this first issue.

■ The first factor is whether *Agency Holding* established a new principal of law by overruling clear past precedent in this circuit or by deciding an issue of first impression. *See Anton v. Lehpamer,* 787 F.2d 1141, 1143 (7th Cir.1986). Additionally, in order for defendants to claim reliance on past precedent, it must have been clearly established in this circuit at the time plaintiff filed suit on January 23, 1985. *Id.,* at 1143; *Charter Oak Fire Insurance Co. v. Domberg,* 83 C 4522 (N.D.Ill., August 3, 1987) (unpublished; available on WESTLAW, 1987 WL 15,413); *See also Valencia, supra,* at 1289 (at time cause of action accrues). Defendants' reliance on *Tellis v. United States Fidelity & Guaranty Co.,* 805 F.2d 741, 746 (7th Cir.1986), *vacated,* — U.S. ——, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987), is therefore clearly misplaced as that case was not decided until one year, ten months after plaintiff filed this lawsuit.

Prior to the ruling in *Tellis,* there was no clear precedent in this circuit. *See Tellis, supra,* at 745. Although the majority of the prior District Court cases held that a two-year limitation period applied, many applied a five-year period. The extensive arguments advanced by the parties, on the defendants original motion to dismiss, as to whether the two or the five-year period should apply support this court's decision that no clearly established precedent existed in this circuit at the time plaintiff filed

this lawsuit. Therefore, the first *Chevron* factor favors retroactively applying the *Agency Holding* decision.

■ The second factor requires this court to identify the interests advanced by *Agency Holding* and determine whether retroactive application of the four-year statute of limitation to the instant case will further or retard those interests. *Anton, supra,* at 1144; *Charter Oaks, supra,* at 3. The chief interests which *Agency Holding* advanced were: (1) achieving uniformity and certainty; (2) minimizing unnecessary collateral litigation; and, (3) ensuring that short state statutes of limitation will not thwart the remedy created by Congress. *Charter Oaks, supra,* at 3.

■ Considering each interest in turn, defendants' first argument is that retroactive application of the four-year limitation period would retard the achievement of uniformity and certainty by causing differential treatment of identical claims depending upon whether the case was still pending after *Agency Holding*. (Def.Resp. at 21). Defendants base their argument on the contention that *Tellis* established clear precedent which courts should apply in cases pending at the time of *Agency Holding*. Defendants' argument is not persuasive.

*Agency Holding* mandates a specific limitations period. As noted above, prior to *Tellis* there was no clearly established precedent in this circuit—some courts applied a two-year limitation period, while others chose a five-year period. Thus, in cases like that at bar, filed pre-*Tellis*, the court would be placed in the uncomfortable position of selecting a limitations period which it would have selected had neither *Agency Holding* nor *Tellis* been decided. *Charter Oaks, supra,* at 3. Therefore, if *Agency Holding* is only prospectively applied, courts will continue to treat similar claims differently, thus retarding *Agency Holding's* goal of uniformity and certainty.

The second purpose advanced in *Agency Holding,* minimizing unnecessary collateral litigation, is not at issue in the present case and, therefore, favors neither retrospective nor prospective application of the four-year statute of limitation.

The final interest which *Agency Holding* advances is ensuring that short statutes of limitation will not thwart the remedy RICO provides. This court agrees with Judge Decker that although a two-year limitation period may not be so short as to "thwart" the RICO remedy, it surely retards its effectiveness. The instant case is a prime example in that plaintiff would be forever barred from pursuing the RICO claims if the two-year statute of limitation, found applicable by Judge Williams, was applied. For these reasons, the second *Chevron* factor also favors the retroactive operation of *Agency Holding*.

The third and final factor is whether retrospective application of *Agency Holding* will produce substantially inequitable results in the present case. The defendants contend that retroactive operation would work a substantial hardship on them because they relied on Judge Williams' determination that the RICO claims were barred in conducting discovery and briefing motions for the past year and five months. However, as plaintiff argues, only a minimal amount of discovery has taken place. The defendants do not contend that they would have conducted discovery differently nor that they are now foreclosed from any discovery due to the prior dismissal of the RICO claims. Thus, they have failed to show substantial inequity in this regard. The hardship defendants would suffer, through retroactive application of *Agency Holding,* is a denial of their entitlement to know "with confidence when their delicts lie in repose." *Agency Holding, supra,* 107 S.Ct. at 2754. On the other hand, if *Agency Holding* is applied prospectively only, plaintiff will be forever precluded from asserting his RICO claims. This last factor, therefore, favors neither plaintiff nor defendants.

In conclusion, defendants failed to show that *Agency Holding* should not be applied retroactively to the instant case. *Agency Holding* did not overrule clear past precedent in this circuit on which defendants may have relied; retroactive operation of

*Agency Holding* in the instant case will further the interests advanced therein; and, no substantial inequity will result from retroactive application of the four-year limitation period. Accordingly, a four-year statute of limitations governs plaintiff's claims. The next step is to determine whether Counts VIII–XI were brought within that four-year period.

■ Judge Williams found that the latest date on which plaintiff's cause of action accrued was January 17, 1981, the date the tender offer closed. (Mem. op., at 4–5). Plaintiff filed this complaint January 23, 1985, four years and six days later. However, Judge Williams also held that the limitation period was tolled as to the Wabash defendants during the pendency of class allegations in *Swanson*, from January 25, 1983 until February 13, 1984. Thus, the RICO claims against the Wabash defendants are timely.

■ The RICO claims asserted against the non-*Swanson* defendants (Peters, Dean Witter, and Paine Webber), however, were brought six days too late. Count IX alleges RICO violations by Dean Witter and Paine Webber only, therefore, it is barred by the four-year statute of limitations. The allegations of Count X against defendant Peters are, likewise, barred. Count XI alleges RICO violations by all defendants and is also barred as to defendants Peters, Paine Webber, and Dean Witter. Therefore, Counts X and XI, as they relate to the non-*Swanson* defendants, and Count IX, in its entirety, were properly dismissed.

## II. Failure To State A Claim

■ The second issue presented is whether the allegations contained in Counts VIII, X, and XI (against the Wabash defendants only) state claims upon which relief can be granted. On a motion to dismiss pursuant to F.R.C.P. 12(b)(6), the court must take the plaintiff's allegations as true and view them, together with reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). For this motion, the court will consider only those facts alleged in the complaint and not any additional facts the parties allege in their briefs. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Thus, a motion to dismiss for failure to state a claim can be granted only if it appears beyond doubt that plaintiff could prove no set of facts entitling him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). With these standards in mind, we now examine Counts VIII, X, and XI of plaintiff's amended complaint in their present posture.

Count VIII is brought against defendants Kearney, K–N, DKM, Moran and Burns alleging violations of 18 U.S.C. § 1962(b). Count X alleges that defendants Boyd, Hosler, Thomas, and Donovan violated § 1962(c) and Count XI alleges that all Wabash defendants acted in violation of § 1962(d). All of these allegations are based on alleged acts of mail and securities fraud and commercial bribery committed by and/or aided and abetted by each of the defendants.

The sections at issue state, in pertinent part, as follows:

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire ... directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections [sic] (a), (b), or (c) of this section.

18 U.S.C. § 1962. The defendants' primary argument is that the plaintiff has failed to

plead facts sufficient to allege a "pattern of racketeering activity."

■ Among the activities specifically defined as racketeering activities are acts of mail fraud,[1] securities fraud,[2] and bribery which is chargeable under State law and punishable by imprisonment for more than one year. 18 U.S.C. § 1961(1). A pattern of racketeering activity requires "*at least* two acts of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added). The Supreme Court noted that this implies that "while two acts are necessary [to meet the pattern requirement], they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Company*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Court went on to note that the Senate Report on RICO required continuity plus relationship of the predicate acts to satisfy the pattern requirement. *Id.* Additionally, the Court noted that another part of the same bill, 18 U.S.C. § 3575(e), defined a pattern as embracing "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*

The Seventh Circuit defined the relationship prong of the pattern requirement as implying "that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986). In order to satisfy the continuity prong, that court held that the "predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" *Id.* (citations omitted). Relevant factors include the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* The court rejected the proposition, however, that the existence of separate schemes was necessary to meet the continuity prong, explicitly stating that a pattern could be found in cases involving only a single scheme. *Id.* The court cautioned that these tests are not set rules, but rather, a factually-oriented standard with no one factor being necessarily determinative. *Id.*, at 977. Examining the predicate acts which plaintiff alleged in Counts VIII, X, and XI with this standard in mind, it is clear that plaintiff has plead facts sufficient to allege a "pattern of racketeering activity."

■ In Count VIII, plaintiff alleges that defendants Kearney, K-N, DKM, Moran, and Burns either committed or aided and abetted in the commission of several acts of mail fraud, to wit: (1) mailing copies of the fraudulent tender offer to plaintiff and all other class members; (2) receiving tendered shares and issuing payment therefore through the mail; (3) mailing a fraudulent recommendation letter to plaintiff and all other class members; (4) filing false statements with the Securities and Exchange Commission ("SEC"); and, (5) paying large sums to defendants Dean Witter and Paine Webber to ensure their silence and cooperation.[3] Plaintiff further alleges that these defendants engaged in acts of securities fraud by: (1) committing the same acts allegedly constituting mail fraud; (2) procuring shares of stock outside the terms of the tender offer during the term of the tender offer; and, (3) failing to file a statement with the SEC pursuant to 15 U.S.C. § 78n(d)(1). Plaintiff also alleges that the defendants committed commercial bribery, an offense codified in Illi-

---

**1.** In order to plead mail fraud, the plaintiff only needs to allege (1) the existence of a scheme to defraud, and (2) the use of the Postal Service in furtherance of that scheme. 18 U.S.C. § 1341.

**2.** *See* Title 15, U.S.C.A.

**3.** Although plaintiff did not expressly allege that the tender and payment of the shares was conducted through the mail, this can be easily inferred because of its inclusion in ¶ 75 enumerating acts of mail fraud. On this motion, the plaintiff is entitled to the benefit of all favorable inferences which can be drawn from the allegations of the complaint. The same holds true for plaintiff's allegations regarding the filing of false statements with the SEC and pay-offs to Dean Witter and Paine Webber.

nois Revised Statutes ch. 38, § 29A–1. This offense cannot serve as a predicate act under RICO, however, because it is not punishable by imprisonment as required by § 1961(1)(A). I.R.S. ch. 38, § 29A–3. Counts X and XI are based on the same predicate acts enumerated above. Defendants contend that plaintiff has failed to plead a pattern because plaintiff alleges only a single scheme, the acquisition of Wabash, and a single predicate act, the mailing of the offer with the accompanying recommendation letter. This argument misstates the law and mischaracterizes the allegations of plaintiff's amended complaint.

First, the Seventh Circuit has expressly held that the existence of separate schemes is not a requirement under RICO. In *Morgan,* the court stated: "the proposition that the predicate acts must always occur as part of separate schemes ... cannot be accepted as a general rule. Otherwise defendants who commit a large and ongoing scheme, albeit a single scheme, would automatically escape RICO liability for their acts, an untenable result." *supra,* at 975. Thus, the absence of separate schemes is immaterial.

Second, plaintiff has alleged literally thousands of predicate acts of racketeering activity through the mailing of the allegedly fraudulent offers and recommendation letters to the thousands of Wabash shareholders and through the receipt of and payment for the tendered shares by mail, in addition to the other alleged acts enumerated above. The question, however, is whether those acts were sufficiently separated in time and place to constitute separate transactions. *Morgan, supra,* at 975; *See Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir.1987); *Marks v. Pannell Kerr Forster,* 811 F.2d 1108 (7th Cir. 1987); *Elliott v. Chicago Motor Club Ins.,* 809 F.2d 347, 349–50 (7th Cir.1986). This court finds that plaintiff has alleged no fewer than seven separate transactions.

The alleged acts of mailing fraudulent offers and recommendation letters to the Wabash shareholders constitute one transaction. From the complaint it appears that the letter and offer were mailed together, thus, it cannot reasonably be considered two acts of mail fraud. "Nor can the mailing of multiple, identical copies of [an offer and letter] be viewed as separate transactions, separated in time and place." *Robin v. Doctors Officenters Corp.,* 84 C 10798 (N.D.Ill., slip op., November 7, 1986) [Available on WESTLAW, 1986 WL 7065]. The receipt by mail of each shareholder's tendered shares and the payment therefor, however, stands on different ground.

Accepting plaintiff's allegations as true, each shareholder was personally defrauded out of varying sums of money, dependant upon the number of shares tendered. Each acceptance and payment consummated a separate act of fraud against the individual shareholder and all of the acceptances and payments together represent the consummation of the overall plan, to acquire control of Wabash through a scheme to defraud numerous investors. *See Eliasen v. Hamilton,* 81 C 123, at 19 (N.D.Ill., Mem. op., March 6, 1987) [Available on WESTLAW, 1987 WL 7815]. Thus, every acceptance and payment by mail represents one separate transaction, or approximately 5,500 predicate acts. For the sake of simplicity the court will refer to all of them collectively as the second transaction.

The third distinct transaction alleged is the filing of fraudulent statements with the SEC. The alleged pay-offs to Dean Witter and Paine Webber constitute the fourth and fifth transactions. The sixth transaction alleged is the procurement of Wabash stock by means outside the terms of the tender offer. The seventh and final transaction alleged is defendants' failure to file a disclosure statement with the SEC pursuant to 15 U.S.C. § 78n(d)(1).

These transactions were sufficiently separated in time. The earliest of these alleged transactions, the fraudulent SEC filings, took place beginning in November of 1980. The latest transaction, mailing pay-offs to Dean Witter and Paine Webber, allegedly occurred in "early 1982." Thus, the plaintiff alleges that these defendants committed at least seven separate criminal acts over a period of approximately one

year all in furtherance of their overall purpose, to acquire Wabash at a price far-below its actual value. *See Sedima, supra,* 105 S.Ct. at 3285, n. 14 (*citing* 18 U.S.C. § 3575(e)). Each of the approximately 5,500 shareholders is an individual victim with a distinct injury arising out of a separate transaction, defendants' fraudulently induced purchase of that shareholder's stock at a price below its actual value. *Compare Gutfreund v. Christoph,* 658 F.Supp. 1378, 1392 (N.D.Ill.1987) *with Elliott v. Chicago Motor Club Ins.,* 809 F.2d 347, 350 (7th Cir.1986). This is the stuff from which patterns may be found. *Gutfreund, supra,* at 1393, n. 22.

■ The defendants final argument relies on *Lipin Enterprises v. Lee,* 803 F.2d 322, 324 (7th Cir.1986), for the proposition that plaintiff must allege a threat of continuing activity in order to meet the "pattern" requirement, and that he has failed to do so. *Lipin,* however, created no such requirement. That court stated that "there must be some indication of a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim. *Id.,* at 324 (*citing* S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)). In the instant case, plaintiff has alleged several instances of fraud with several thousand victims. *Lipin* is, thus, inapposite to the instant case.

In conclusion, plaintiff has alleged that defendants committed several acts of mail and securities fraud over a period of over a year in furtherance of an overall scheme to defraud Wabash shareholders and thus acquire Wabash. These acts of fraud were distinct; some related to inducing the shareholders to sell their stock at an inferior price, some related to allegedly fraudulent filings with the SEC and payoffs aimed at concealing the overall scheme, while still others related to acquiring Wabash stock outside the terms of the tender offer. While these acts were all part of a single grand scheme, they were ongoing over a period of over one year and caused distinct injuries to approximately 5,500 shareholders. Under the facts of this case, plaintiff has satisfied both the continuity

and relationship aspects of the pattern requirement sufficient to withstand a motion to dismiss.

■ Defendants make a final point in their response which merits some discussion. Count XI alleges violations of § 1962(d) by all defendants. In ¶ 94 of that Count, plaintiff also names Wabash as the "enterprise." Defendant argues that under Seventh Circuit law plaintiff's claim against Wabash must therefore fail, because the defendant cannot also be the "enterprise." (Def.Resp. at 7, n. 4). The Seventh Circuit has held that the enterprise may not also be a defendant under § 1962(c). *Haroco v. American Nat. B. & T. Co. of Chicago,* 747 F.2d 384 (7th Cir. 1984). That decision was based on the express language of subsection (c) which requires the defendant to be "employed by or associated with" the enterprise. *Id.,* at 400; 18 U.S.C. § 1962(c). Likewise, Judge Nordberg held that the language of § 1962(b) prohibited the same party from being both defendant and enterprise. *Bruss Co. v. Allnet Communication Services, Inc.,* 606 F.Supp. 401, 406 (1985); *See also Robinson v. City Colleges of Chicago,* 656 F.Supp. 555, 560–61 (N.D.Ill.1987). This court finds no language in subsection (d), however, which would mandate a like prohibition.

The defendant is neither required to be "employed by or associated with" the enterprise, nor required to "acquire or maintain an interest in or control of" the enterprise. 18 U.S.C. § 1962. The only thing required by subsection (d) is that the defendant is a "person" who conspired to violate subsection (a), (b) or (c). *Id.,* at § 1962(d). Wabash clearly meets the RICO definition of "person." 18 U.S.C. § 1961(3). Additionally, plaintiff alleges that Wabash conspired with the other defendants to violate § 1962(b) and (c). Wabash, the corporate enterprise, is itself an alleged central figure (a co-conspirator) in the criminal scheme to gain control and conduct the affairs of Wabash through a pattern of racketeering activity. *Haroco, supra,* at 401. Therefore, defendant Wa-

bash may be both defendant and enterprise for purposes of § 1962(d).

### III. Class Certification

Plaintiff has also moved for class certification pursuant to F.R.C.P. 23(b)(3). That rule allows maintenance of a class action if: (1) the prerequisites of Rule 23(a) are satisfied; (2) the court finds that common questions of law or fact predominate over individual issues; and (3) the court finds that a class action is a superior method for the fair and efficient adjudication of the controversy. Fed.Rules Civ.Pro.Rule 23, 28 U.S. C.A. Rule 23(a) clearly outlines the prerequisites to a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

This court follows Judge Aspen's well-reasoned opinion conditionally certifying the class in *Swanson* in finding that this case is "uniquely suited to class action treatment." *Swanson, supra,* at 1326 (citations omitted).

The Wabash defendants argue that Mr. Barkman fails to satisfy the third and fourth prerequisites under Rule 23(a), typicality and adequacy of representation. These defendants contend that class certification should be denied because Barkman lacks personal interest and involvement in the case, lacks standing to assert the Rule 10b–13 claims contained in Count III, and is subject to unique defenses. As in *Swanson,* these objections do not require this court to deny Barkman's motion.

■■■ Adequate representation consists of two general elements: (1) it must appear that the representative parties, through their attorneys will vigorously

prosecute the class claims, and (2) there must be an absence of conflict or antagonism between the interests of the named plaintiffs and those of other members of the proposed class. *Hernandez v. United Fire Ins. Co.,* 79 F.R.D. 419, 425 (N.D.Ill. 1978). Regarding the first of these two elements, the Wabash defendants' response cites parts of plaintiff's deposition to show that he has little interest or involvement in this matter. These citations are taken out of context, however, and there is other testimony in his deposition which implies that plaintiff is both interested and involved. *See* Barkman Dep. at 12–13, 37, 66–72, 245. Barkman testified that he is willing to incur the financial burdens of this litigation, he appeared for a lengthy deposition, he has answered written discovery, and has diligently pursued his claims and those of the class. Also, plaintiff's counsel appears to be both competent and experienced in class action litigation. Plaintiff's claimed lack of familiarity with the facts of this case, allegedly involving a complex securities fraud conspiracy, does not justify denial of certification. *Hernandez, supra,* at 426–27.

■■■ The Wabash defendants' next contention is that plaintiff lacks standing to assert the claims contained in Count III because plaintiff himself received capital gains tax treatment and thus he was not harmed by the Rule 10b–13 violations alleged in Count III of his Amended Complaint.[4] Again following Judge Aspen's reasoning in *Swanson,* this court finds that Barkman's possible inability to prove damages on this one of several counts does not necessarily vitiate the typicality of his claim nor the adequacy of his representation. Rather than denying Barkman's motion for class certification on this basis, we feel that the proper solution is to condition class certification on the addition of at least one Wabash shareholder who *can* assert the Count III claims. *Swanson, supra,* at 1324.

---

**4.** Paine Webber asserts that plaintiff was not legally entitled to capital gain tax treatment and is, therefore, barred from representing the class due to his lack of honesty and integrity. The record, however, does not support these allegations besmirching plaintiff's integrity and this court need not address them given the condition upon which class certification is granted.

■ The Wabash defendants' final contention is that plaintiff's claims are subject to unique defenses on the 10b–13 claim discussed above, and on Counts I and II as to materiality and reliance. The addition of a second named plaintiff will eliminate the 10b–13 problem. These defendants argument regarding Counts I and II are based on certain statements contained in plaintiff's deposition. These defendants characterize these statements as "critical admissions" that plaintiff did not rely on the alleged misrepresentations and omissions in the tender offer.

First, this court declines to adopt defendants' characterization of plaintiff's statements as "critical admissions." Second, the primary issues in this case are whether the defendants have violated various state and federal securities laws and the RICO statute. Barkman's personal reliance is irrelevant to the question of the defendants' liability to the class for any such violations. To the extent that it is relevant, plaintiff's personal reliance will become an issue only when the damages recoverable by the individual class members are determined. *Swanson, supra,* at 1325. Therefore, the issue of plaintiff's personal reliance will hardly be a "major focus of the litigation." *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). For these reasons, as to the claims against the Wabash defendants, this court finds that the facts of this case warrant class certification and that Barkman is a proper named plaintiff for all these claims, with the possible exception of those contained in Count III.

■ Defendants Paine Webber and Dean Witter join in the Wabash defendants' arguments and advance their own objections to class certification of the common law fraud claim. Although both defendants responded separately to the motion, their arguments are identical: the common law fraud claim involves application of the laws of the states of residence of every class member and raises issues of the reasonable reliance of each class member, thus individual issues of law and fact predominate and preclude class certification.

Initially, this court notes that although plaintiff's motion for class certification was originally filed nine months prior to adding the common law fraud claims, the motion will be treated as addressing the amended complaint in its entire present posture. This is done in the interests of justice and expediency since it is apparent from plaintiff's briefs that he intended this result.

Turning now to the merits of defendants' objections, they first contend that under Illinois choice of law principles this court must apply the law of each class member's residence because the law of the state where each individual member of the class transacted his purchase would govern the common law fraud claim. This is not an accurate statement of the law in this circuit.

The Seventh Circuit has held that Illinois applies the "most significant contacts" test in determining choice of law issues. *Dr. Franklin Perkins School v. Freeman,* 741 F.2d 1503 (7th Cir.1984), *citing, Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). Under this test the court must consider several factors, including: "(1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the domicile, nationality, place of incorporation and place of business of the parties; and, (4) the place where the relationship of the parties is centered." *Ingersoll, supra,* 262 N.E.2d at 597. Applying this test to the facts of the instant case, this court is persuaded that Illinois and/or New York enjoy the most significant contacts to the dispute.

The locus of the acts in this case is either Illinois or New York. Both Wabash and Kearney had their principal places of business in Illinois. The defendant Wabash officers, Boyd, Hosler, and Peters, acted in furtherance of the conspiracy in Illinois or in New York. Moreover, although Paine Webber's principal place of business is in New York, the employees of Paine Webber who issued the allegedly misleading fairness opinion were based in Chicago and met with the Wabash Board of Directors in Illinois. The payments to Wabash officers

for these stock options and permission to make delayed stock tenders were authorized in Illinois or New York.

Dean Witter and its employees involved were located in New York, and participated in meetings with the other Defendants in New York and Illinois. DKM also was located in New York and its officer-directors, Moran and Burns, performed the acts that are complained of in New York or Illinois.

The tender offer was prepared and originated from Illinois or New York. According to the terms of this tender offer, the class members could only avail themselves of the offer, by sending stock certificates and a letter of transmittal to one of two agents the Defendants designated. The Defendants designated Continental Illinois National Bank of Chicago and First Jersey National Bank of New York City as their agents. Thus, the class members could only perform in one of these two states. In fact there is no state other than New York and Illinois in which any of the acts complained of occurred. Additionally, both New York and Illinois have a strong interest in regulating the conduct of corporations doing business therein, especially in light of allegations of fraud. Therefore, this court need not deny certification on this first basis as it appears to be illusory.

█ The second contention advanced by these defendants is that each individual class member would have to prove reasonable reliance in order to prevail on Count II, thus degenerating the class action into a series of "mini-trials" which would defeat the purposes of class certification. This argument, although not without merit, does not persuade this court that Count II may not properly be maintained as a class action. Rather, this court follows decisions of this and other jurisdictions in holding that individual issues of reliance do not thwart class actions. *Helfand v. Cenco, Inc.*, 80 F.R.D 1, 8 (N.D.Ill.1977).

Unlike many of the cases which defendants cite in support of this proposition, the fraud alleged in this case is based on conduct of defendants which was uniform as to all class members. No individual representations were made, nor were there any separate communications between defendants and individual class members; Cf. *Zandman v. Joseph*, 102 F.R.D. 924, 928 (N.D.Ind.1984). All class members were faced with the same allegedly fraudulent statements and instances of non-disclosure in determining whether or not to accept the tender offer. Thus, essentially the same proof that will be introduced in the federal securities law claims will be relevant to the state law claims and issues of personal reliance may be reserved for a determination of damages, if plaintiff proves his case.[5] Therefore, the predominantly common issues between the federal and state claims together with the superiority of class treatment to the instant case as a whole mandates granting class certification on Count II as well.

In conclusion, this court finds that Barkman has met all of the prerequisites of Rule 23(a), except as to the 10b–13 allegations of Count II for which a suitable named plaintiff must be found within 30 days. Additionally, common questions of law and fact predominate over any purely individualized questions and class action appears to be superior to any other available methods for the fair and efficient adjudication of this controversy. Rule 23(b)(3). For these reasons, plaintiff's motion for class certification is granted subject to the condition that at least one other Wabash shareholder who can assert the Count III claims be added within 30 days.

In sum, *Agency Holding* does apply retroactively to the instant case and thus Counts VIII, X (against all defendants except Peters) and XI (except as against non-*Swanson* defendants) were brought within the applicable four-year limitation period. Also, the plaintiff has sufficiently alleged a "pattern of racketeering activity" under § 1962(b) and (c) to withstand a motion to dismiss. Additionally, Wabash may be

---

**5.** This court has discretion to decertify the class at any time before an adjudication of the merits if it appears, through discovery or otherwise, that individual reliance will become a major focus of the litigation. *See generally* 1 H. Newberg § 3.12.

named both as a defendant under the § 1962(d) conspiracy count and as the enterprise in the underlying § 1962(b) and (c) violations. Finally, this case is well-suited to class action treatment. The addition of a named plaintiff that can assert the claims of Count II should cure any objections, under 23(a)(3) or (4), to plaintiff's representation of the class, because otherwise plaintiff has met the requirements of Rule 23(a).

Accordingly, plaintiff's motion to vacate the May 23, 1986 order of dismissal is granted on Count VIII in its entirety and Counts X and XI against all Wabash defendants. Plaintiff's motion is denied on Count IX, Count X against Peters, and Count XI against Peters, Dean Witter, and Paine Webber. Plaintiff's motion to certify a class of all Wabash shareholders, other than defendants, "who sold their Wabash, Inc. shares pursuant to the tender offer made by K–N Holdings Inc." is granted subject to the condition set forth above.