**Charles W. BROOKS, Plaintiff,**

v.

**CENTRAL ARKANSAS NURSING CENTER, Defendant.**

**No. LR–C–97–142.**

United States District Court,
E.D. Arkansas,
Western Division.

Jan. 11, 1999.

Charles W. Brooks, Little Rock, AR, pro se.

W. Russell Meeks, III, Meeks & Jernigan, P.A., Little Rock, AR, for Defendant.

### MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

Plaintiff, Charles W. Brooks (Brooks), instituted this action *pro se* on February 17, 1997, alleging that the defendant, Central Arkansas Nursing Center (Central), discriminatorily terminated his employment as Di-

rector of Nursing at Central on July 17, 1996, on the basis of race and sex.

A bench trial was conducted in this matter on December 10, 1997, with Brooks proceeding *pro se.* Brooks called the three witnesses designated by Central as its witnesses to be called in Central's case-in-chief. Brooks did not testify himself, neither did he call any witnesses on his own nor introduce any exhibits. Brooks rested his case and Central immediately moved for judgment as a matter of law which the Court granted and Brooks' action was dismissed with prejudice [1] in view of Brooks' failure to establish a prima facie case for either racial or sexual discrimination. *See; McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

On December 17, 1997, Central filed a post-trial petition for attorney's fees and costs asserting that Central is the "prevailing party" under the terms of Title 42 United States Code § 2000e–5(K), which provides:

"(K) Attorney's fee ... In any action or proceeding under this Title ... the Court, in its discretion, may allow the prevailing party, ..., a reasonable attorney's fee as a part of the costs...."

W. Russell Meeks III, Esq., counsel for Central, submitted an affidavit in support of Central's request for relief stating that the total fee requested is $14,762.50 which represents actual time of 118.10 hours incurred at the hourly rate of $125.00; and that the costs incurred is $716.64, aggregating a total sum of $15,479.14 that Central should recover from Brooks as the "prevailing party." Counsel for Central also submitted exhibits 1 and 2 setting forth in detail the legal services rendered in this matter from March 6, 1997 to December 16, 1997, as well as the costs incurred.

In view of the fact that when Brooks filed his complaint, Brooks made application to proceed *in forma pauperis* and submitted information stating: that he was unemployed, that he received his last wages on January 10, 1997, in the sum of $676.00 and had not received any money from any source during the past twelve months, that he had no interest in any real estate or other valuable property, and that he had four dependants—a wife and three minor children, the Court scheduled a hearing in order to determine Brooks' financial standing in an effort to determine what would be reasonable and equitable if the Court should find that Central is entitled to requested relief.

During the hearing, Brooks stated that he is presently employed as a registered nurse with the Veterans Administration Hospital earning $31,187.00 annually, and that his monthly gross earning was $1,340.95, but his net take home pay was $678.62; that he has three minor children ages 6, 8 and 11; and that his wife is unemployed and has not worked since June, 1998, due to back and health problems; and that his wife is not eligible to receive workers unemployment benefits. Brooks further stated that he is residing with his family in his mother's home and is obligated to pay a monthly rental fee in the sum of $395.00; and that his mother is confined in a nursing home. Brooks stated that his monthly utility bills—electricity, water and natural gas—amount to $475.00; that his grocery bill is between $200.00 and $300.00 monthly; that the clothing expense for his family is between $200.00 and $300.00 monthly; that he has a monthly automobile note that is $383.00, but, presently, he is in arrears and anticipates an action by the dealer to repossess the vehicle; and that his monthly expense for his automobile is approximately $150.00 which includes, among other things, gasoline and maintenance.

Brooks further testified that in September, 1998, the Internal Revenue Service issued a levy on his bank account in order to acquire funds to be applied to a $12,000.00 income tax obligation; that a garnishment was issued against his payroll on September 8, 1998, and that pursuant to this action approximately $223.88 will be deducted from his monthly check until the balance due on a

---

1. During the time frame between the filing of his complaint and the trial of this matter, Brooks engaged the services of two attorneys. However, the first attorney was dismissed by Brooks and the second attorney was granted permission to withdraw as counsel of record. Brooks did not file a full and complete response to Central's Interrogatories; and failed to submit Conference Information Sheet as well as a witness list.

Municipal Court Judgment in the sum of $1,315.36 has been paid.

## DISCUSSION

### A.

## MATTERS CONSIDERED IN DETERMINING WHETHER CENTRAL IS ENTITLED TO AN AWARD OF ATTORNEY'S FEE AND COSTS

Brooks, an African–American male, while representing himself in this Title VII action, did not testify himself regarding his claim of being terminated as Director of Nursing by a black female Administrator because of his race and sex; Brooks did not call witnesses of his own or proffer any exhibits, but simply called three witnesses summoned by Central to testify in its case in-chief.

After Brooks rested his case, Central moved for judgment as a matter of law which the Court granted and dismissed the action with prejudice. It is plain that Brooks' action had no factual or legal basis and was, indeed, unreasonable, thus, imposing the obligation on Central to employ the services of an attorney, file pleadings and submit to needless litigation.

A major concern that the Court has in finding that Central is entitled to an award of attorney's fees and costs as a "prevailing party" is the likelihood of discouraging potential plaintiffs from undertaking the role of "private attorney general" in implementing national measures designed by Congress to make the federal constitution a living reality without respect to gender or ethnicity. On the other hand, the Supreme Court in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), set forth the relevant guideline in assessing attorney's fees against a plaintiff in favor of a prevailing defendant by stating:

"... [A] plaintiff should not be assessed his opponent' attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such as claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense."

The totality of circumstances in this proceeding create a clear portrait that Brooks' action was groundless and unreasonable. In addition, Brooks continued to litigate on a *pro se* basis after realizing that attorneys he consulted were reluctant to pursue his alleged claim of discrimination. Accordingly, the Court finds that Central is entitled to an award of attorney's fees and costs.

### B.

## FACTORS CONSIDERED IN DETERMINING THE AMOUNT OF THE AWARD

In support of Central's request for an award of attorney's fees in the sum of $14,762.50, Central submitted exhibits showing in chronological order the number of days spent by Central's attorney on the various tasks performed in representing Central, which amount to 69 days, but the amount of time spent on each item or task is not designated. Instead, a total of 118.10 hours are specified at the end of the chronological order of the daily activities performed. This methodology does not afford the Court the means of determining objectively the reasonableness of the time employed to perform the specific tasks designated. *See; Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974), where the court in discussing the time and labor required as a guideline in awarding attorney's fees made the following observation:

(1) The time and labor required. Although hours claimed or spent on a case should not be sole basis for determining a fee.... The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time require to complete similar activities.... It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such nonlegal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

Exhibit number 1 to affidavit submitted by counsel designates, among other activities,

"Review file/pleadings, etc" for the following dates: 4/2/97, 4/10/97, 4/16/97, 4/24/97, 6/3/97, 6/6/97, 6/19/97, 6/24/97, 7/23/97, 7/24/97, 8/8/97, 9/8/97, 9/15/97, 10/14/97 and 12/12/97. While the exhibit neither designates the time spent on each task, nor identifies all of the tasks performed, but employs "etc" to identify a number of unspecified tasks, the Court is of the view these tasks could have been performed by a clerk or paralegal.

Another guideline that the Court has considered in determining the amount of the award is the "novelty and difficulty of the questions" raised in the proceeding. *See: Johnson v. Georgia Highway Express, Inc.,* supra. The Court is of the view that the issues involved in this action were not novel or of first impression warranting extensive time, research and effort on counsel's part.[2]

While the methodology employed by Central in determining the number of hours allegedly spent in this proceeding does not afford the Court the opportunity to determine the amount of time spent for each task designated, the Court is of the view, when considering the guidelines just discussed as well as the fact that counsel was admitted to practice before the Court in 1974, and, as his affidavit asserts, "concentrates primarily in matters of litigation and trials," 118.10 hours for the designated activities are somewhat excessive.[3]

The Court is persuaded that an allowance of 80 hours all total is fair and reasonable; and that the hourly rate of $125.00 is also reasonable given counsel's experience, reputation and ability. In essence, the Court award $10,000.00 for attorney's fees and $716.64 for costs. However, the Court is persuaded that due to Brooks' indigence and straitened circumstances, the award should be limited as follows: (a) attorney's fees to

the extent of $1,000.00 and (b) costs to the extent of $100.00. The Court is of the view that the amount that Central will actually receive will, indeed, on the one hand, fulfill the deterrent purpose of minimizing frivolous lawsuits while, on the other hand, affording Brooks the opportunity to avoid financial destruction. See: *Faraci v. Hickey–Freeman Company Inc.,* 607 F.2d 1025, 1028 (2d Cir. 1979) (stating that the trial court should determine whether, in light of the plaintiff's ability to pay, reduced assessment would fulfill the Congressional goal of discouraging frivolous lawsuits without subjecting the plaintiff to financial destruction). In *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 718, 94 S.Ct. 2006, 40 L.Ed.2d 476, (1974), the Court in addressing the attorney's fee issue observed, in essence, that a fee award should embrace equitable consideration in awarding attorney's fee to the prevailing party by considering the relative wealth of the litigants.

In *Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911 (11th Cir.1982), the court made the following relevant observation:

"... [W]e hold that a district court awarding attorney's fees to a prevailing Title VII defendant should consider not only the applicable Johnson guidelines, but also, as a limiting factor, the plaintiff's financial resources.... [E]quitable considerations appropriately guide the determination of fee awards authorized by federal statute, and the financial resources of the paying party are one such consideration."

Accordingly, the Court, for the reasons discussed, grants Central's requested relief in part and denies same in part.

---

2. The remaining guidelines set out in *Johnson v. Georgia Highway Express, Inc.,* supra, are: (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship

with the client; (12) awards in similar cases. In addition to the two guidelines discussed by the Court earlier, the Court in granting the requested hourly rate of $125,00, the Court, in effect, finds that counsel, indeed, possesses the skill to perform the legal service properly.

3. As previously noted, the Court dismissed this action with prejudice at the close of Brooks' case-in-chief. Central's attorney spent at most three hour during the trial of this matter.